# AGREEMENT

This agreement (the "Agreement") entered into by and between **BECKHAM JEWELRY, LLC D/B/A BECKHAM CUSTOM JEWELRY CO.**, (hereinafter referred to as "CLIENT"), and BOBBY WILKERSON, INC., (hereinafter referred to as "WILKERSON"), is for the purpose of planning and conducting a promotional sale of CLIENT'S stock of merchandise located at **120 DISTRICT BLVD., STE. D110, JACKSON, MS 39211** (the "Premises").

**1. EVENT PROGRAM**: WILKERSON shall provide to CLIENT a complete event program (the "Program") including, but not limited to, printed materials, pricing materials, and tags, as well as specialized advertising such as newspaper ads, radio spots and banners ("Program Materials"). All printed materials and specialized advertising materials are copyrighted by WILKERSON and are for the exclusive use of CLIENT only within the time frame of the Agreement and are not to be copied, distributed, or used, directly or indirectly, by CLIENT or by any other person or entity other than as set forth herein.  All Program Materials whether or not protected by federal copyright will remain the property of WILKERSON and will be removed by WILKERSON at the conclusion of the Program.

**2. PROGRAM CONSULTANT**:   WILKERSON shall also recommend an independent consultant (hereafter Consultant) who will assist and advise CLIENT in the planning, supervision, and management of the Program. The Consultant will arrive at the Premises on or about the **16th day of June, 2025** and will remain at such location for the duration of the Program.

**3.  DURATION OF PROGRAM**:  WILKERSON and CLIENT agree that the Program shall begin with a mailing on or about **June 19, 2025** (hereafter "Commencement Date") announcing a private sale on or about **June 24, 2025**, and to be concluded at the discretion of WILKERSON, but in no case later than **August 2, 2025** (hereafter "Contractual Ending Date"). The Commencement Date through the Contractual Ending Date is hereafter the "Sale Term".



BECKHAM CUSTOM JEWELRY: 2025

**4. COMPENSATION**: In consideration for providing the services, advertising development and creativity, newspaper camera-ready ads, and Sales Consultant, CLIENT shall pay to WILKERSON as compensation a fee of **11%** of the total net sales generated during the Sale Term. Total net sales (hereafter Total Net Sales) is defined as the total gross sales (including, but not limited to layaway, charge, credit and cash sales), minus repairs, sales tax and credit card fees. Collections of layaways and accounts receivable during the Sale Term which were on the books prior to the beginning of the Program (a list of these items shall be provided to WILKERSON by CLIENT prior to the beginning of the Program) are not included as Total Net Sales. Notwithstanding anything contained herein to the contrary, the commission paid to WILKERSON on the sale of natural diamond solitaires of one carat or larger shall be 4% of net sales. In the event said natural diamond of one carat or larger is mounted and sold, then WILKERSON shall be paid a commission of 4% of net sales on the natural diamond and its normal commission as set out herein on the mount.

**5. EXPENSES**: All expenses connected with the Program shall be the responsibility of CLIENT including, but not limited to:

      a. weekly stipend of $1,050.00 to the Consultant;

      b. a one-time travel fee in the amount of $400.00 for consultant;

      c. the cost of all consignment memo merchandise sold at the Program, and

      d. all unpaid invoices owed WILKERSON.

**6. PAYMENT OF FEES**. WILKERSON'S fee shall be paid on Tuesday mornings by check or bank draft, payable to WILKERSON. The first fee payment shall be due on Tuesday morning, **July 1, 2025** and shall include the percentage of Total Net Sales due WILKERSON as set forth herein plus all charges for signs, supplies, and all consignment memo merchandise sold to date as set forth herein. Each remaining weekly fee payments shall be made each Tuesday morning thereafter and shall include the percentage of Total Net Sales due WILKERSON from that week, charges for additional supplies that have not been paid for, and the cost of all consignment memo merchandise

sold that week.  Any outstanding balance due WILKERSON hereunder is payable in full on the second business day after the Contractual Ending Date.

Also payable with the first fee payment but *paid directly to the Consultant* is the one-time travel fee of $400.00 and the stipend for arrival day to date. Each remaining weekly stipend payments shall be made to the Consultant on each Tuesday morning for that week.

**7. DISBURSEMENTS:**   WILKERSON'S agent shall be given complete access during the term of this Program to all financial records associated with the Program, including any records indicating the revenue and disbursements associated with the Program, sales tickets, bank deposit receipts, and well as any disbursement records. *CLIENT shall reimburse to WILKERSON for any monies advanced on behalf of CLIENT relating to the Program.*

**8. ADDITIONAL INVENTORY**:  If permitted locally, WILKERSON shall have the right to supplement the Program with additional inventory. Title to such additional inventory shall remain vested in WILKERSON before, during and after the Program. WILKERSON shall have the absolute and unconditional right to file a financing statement and/or security agreement on all additional inventory supplied by WILKERSON.

**9. INSURANCE**: CLIENT shall provide complete insurance coverage on all inventory located at the Premises, as well as any additional inventory provided by WILKERSON or obtained for CLIENT by WILKERSON from other vendors.  CLIENT shall provide WILKERSON with a certificate of insurance showing WILKERSON as a loss payee for all additional inventory (no additional inventory will be shipped until this Certificate of Insurance is provided), and as additional insured on liability insurance. CLIENT further agrees to diligently pursue any claim under said policy or policies and will forthwith upon their collection pay over to WILKERSON the amount of the proceeds relating to or resulting from loss or damage to WILKERSON'S additional inventory or any additional inventory WILKERSON obtained for CLIENT.

**10. RESTRICTIONS**:  From the date of execution of this Agreement until the completion of the Program, CLIENT shall not (*i*) make any retail sales other than in the ordinary course of business and at customary prices that CLIENT'S customers are accustomed to, or (*ii*) advertise or conduct a "Retirement, Liquidation, Closing, Moving, or Fire sale" of any sort until the commencement of the Program contemplated herein unless otherwise authorized by WILKERSON. No employee or principal of CLIENT shall make any sales of jewelry within or outside of CLIENT'S premises other than for the benefit of the Program.

**11. ENFORCEMENT**:   In the event that any provision contained herein should be declared void, illegal or otherwise unenforceable, such provisions will be deemed to be severable and all remaining provisions of the Agreement will remain in full effect.

**12. DEFAULT AND REMEDIES**. In the event of default or failure of CLIENT to comply with any term, condition or obligation stated herein, WILKERSON may: (*i*) recall any Consultant or other personnel; and (*ii*) declare immediately due all fees or other sums due WILKERSON.

**13. COMPLETE AGREEMENT**: The provisions contained herein and the provisions of any consignment security agreement entered into between the Parties, constitute the full and complete agreement between the parties.  No agent of WILKERSON has the authority to waive or modify this Agreement or to bind WILKERSON by making any promises or representations not contained herein.  It is expressly understood that there are no agreements or guarantees concerning promotion profits, gross proceeds or percentage of items to be sold, expressed, written or implied by WILKERSON other than those set forth herein.  The liability of WILKERSON to CLIENT for any reason arising from or out of the execution, performance, or attempted execution or performance of this Agreement will be limited to the fees to date due and payable, to WILKERSON, hereunder.

BECKHAM CUSTOM JEWELRY: 2025

In no event shall this Agreement be deemed to create a partnership or joint venture between WILKERSON and CLIENT, nor shall WILKERSON be liable for any obligations, liabilities, income or sales taxes of CLIENT.

EXECUTED THIS _____ DAY OF _____, 2025.

**BECKHAM JEWELRY, LLC**  BOBBY WILKERSON, INC.
**D/B/A BECKHAM CUSTOM JEWELRY CO.**

By: _____   By: _____
     OWNER/AUTHORIZED AGENT                  BWI SELLING AGENT

Title: _____   Date: _____

APPROVED AND ACCEPTED:

_____
Authorized Agent/Officer

5

**Beckham Custom Jewelry Co**
**Jackson, MS**
**6/3/25**

## WILKERSON COMMISSION SALE

| | #1 | #2 | #3 |
|---|---:|---:|---:|
| **SALES GOAL** | $ 444,625 | $ 485,046 | $ 505,256 |
| Inventory at Cost | 599,733 | 599,733 | 599,733 |
| Number of weeks | 8 | 8 | 8 |
| Avg Markup | 3.00 | 3.00 | 3.00 |
| Avg Discount on Inventory | 50% | 50% | 50% |
| Commission to Wilkerson | 11% | 11% | 11% |
| Percent of inventory projected sold | 44% | 49% | 50% |
| Advertising | 6.0% | 6.0% | 6.0% |
| Travel fee | 400 | 400 | 400 |
| Consultants' Expense | 150 | 150 | 150 |
| **INCOME** | | | |
| Sales of original inventory | $ 399,422 | $ 436,306 | $ 449,800 |
| Sales of Memo merchandise | 45,203 | 48,740 | 55,456 |
| Total gross sales | 444,625 | 485,046 | 505,256 |
| Cost of Original Inventory Sold | 266,281 | 290,871 | 299,867 |
| Projected Gross Margin on Wilkerson Merch: | 40% | 40% | 40% |
| Cost of Wilkerson merchandise sold | 27,122 | 29,244 | 33,274 |
| **TOTAL COST OF GOODS SOLD** | 293,403 | 320,115 | 333,140 |
| **Proj. Gross Profit from Wilkerson Merch:** | 18,081 | 19,496 | 22,183 |
| **Gross Profit from Sales of Original Inventory** | 133,141 | 145,435 | 149,933 |
| **EXPENSES** | | | |
| Advertising | 26,678 | 29,103 | 30,315 |
| Consultant Expense | 9,450 | 9,450 | 9,450 |
| Commission to Wilkerson | 48,909 | 53,355 | 55,578 |
| Travel fee | 400 | 400 | 400 |
| Fixed Store Overhead | 30,485 | 30,485 | 30,485 |
| **TOTAL EXPENSES** | 115,921 | 122,793 | 126,229 |
| **Non Commissioned Additional Income** | | | |
| Repairs | 10,560 | 11,520 | 12,000 |
| Furniture, Fixtures & Equipment | 15,000 | 15,000 | 15,000 |
| CC Fee Wilkerson Commission Credit | 880 | 960 | 1,000 |
| Diamond Commission Adjustment | 1,556 | 1,698 | 1,768 |
| RJO Vendor Merchandise Dividend 5.2% | 1,410 | 1,521 | 1,730 |
| **Total Non Commissioned Income** | 29,407 | 30,699 | 31,499 |
| **Total Cash less cost of memo to Owner:** | 446,910 | 486,500 | 503,481 |
| LESS TOTAL EXPENSES | (115,921) | (122,793) | (126,229) |
| **DOLLARS RETURN TO OWNER** | **$ 330,989** | **$ 363,708** | **$ 377,253** |
| Less Cost of Original Inventory: | (266,281) | (290,871) | (299,867) |
| **Net Profit:** | **$ 64,707** | **$ 72,837** | **$ 77,386** |
| Value of Owner's Goods Sold | $1.24 | $1.25 | $1.26 |
| Gross Margin of Profit on Gross Sales: | 34% | 34% | 34% |
| VALUE OF REMAINING INVENTORY | $333,452 | $308,862 | $299,867 |

The figures provided are estimates only. They are not to be interpreted as a guarantee, either written or verbal. This projection is to be used only as a guideline and is subject to change.