United States Bankruptcy Court
Southern District of Mississippi

| | |
|---|---|
| In re: | Case No. 25-01234-JAW |
| Beckham Jewelry, LLC | Chapter 11 |
| Debtor | |

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0538-3 | User: mssbad | Page 1 of 2 |
| Date Rcvd: Jun 25, 2025 | Form ID: pdf012 | Total Noticed: 1 |

The following symbols are used throughout this certificate:
**Symbol    Definition**

+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jun 27, 2025:**

**Recip ID      Recipient Name and Address**
dbpos      + Beckham Jewelry, LLC, 120 District Blvd, Ste D110, Jackson, MS 39211-6304

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jun 27, 2025        Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on June 25, 2025 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Christopher J. Steiskal, Sr. | on behalf of U.S. Trustee United States Trustee christopher.j.steiskal@usdoj.gov |
| Craig M. Geno | cmgeno@cmgenolaw.com kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com |
| Craig M. Geno | on behalf of Trustee Craig M. Geno cmgeno@cmgenolaw.com kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com |
| Jennifer A Curry Calvillo | on behalf of Debtor In Possession Beckham Jewelry LLC jennifer@therollinsfirm.com, jennifer.curry.ecf@gmail.com,CalvilloJR81745@notify.bestcase.com |
| Robert B. Ireland, III | on behalf of Creditor TDLDC Retail I LLC rireland@watkinseager.com, kleblanc@watkinseager.com |
| Steven Usry | on behalf of U.S. Trustee United States Trustee steven.usry@usdoj.gov |

| | | |
|---|---|---|
| District/off: 0538-3 | User: mssbad | Page 2 of 2 |
| Date Rcvd: Jun 25, 2025 | Form ID: pdf012 | Total Noticed: 1 |

Thomas Carl Rollins, Jr
    on behalf of Debtor In Possession Beckham Jewelry LLC trollins@therollinsfirm.com, jennifer@therollinsfirm.com;trollins.therollinsfirm.com@recap.email;notices@therollinsfirm.com;kerri@therollinsfirm.com;breanne@therollinsfirm.com;TRollins@jubileebk.net;calvillojr81745@notify.bestcase.com

United States Trustee
    USTPRegion05.JA.ECF@usdoj.gov

William E McLeod
    on behalf of Creditor McLeod & Associates P.A. bmcleod@eptaxlaw.com, lmcallister@eptaxlaw.com;mphelps@eptaxlaw.com;jharkins@eptaxlaw.com

TOTAL: 9

___



**SO ORDERED,**



**Judge Jamie A. Wilson**
**United States Bankruptcy Judge**
**Date Signed: June 25, 2025**

The Order of the Court is set forth below. The docket reflects the date entered.
___

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:    Beckham Jewelry, LLC, Debtor        Case No. 25-01234-JAW
                                                                                                           CHAPTER 13

**AGREED ORDER AUTHORIZING EMPLOYMENT AND RETENTION**
**OF WILKERSON, INC. AS SALE CONSULTANT**

Upon the Debtor's Motion to Employ Wilkerson, Inc. as Sale Consultant (the "Motion", Dkt # 58); Response filed by TDLDC Retail I, LLC (Dkt # 65); Objection filed by the United States Trustee (Dkt # 66)); and the Court having reviewed the Motion, the Agreement, and the Wilkerson Declaration; and the Court finding that (a) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and opportunity for a hearing were appropriate under the circumstances and no other notice need be provided, (d) Wilkerson does not hold or represent an interest adverse to the estate and is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, (e) the employment of Wilkerson is necessary and in the best interests of the Debtor's estate, and (f) good and sufficient cause exists for the relief granted herein; it is hereby ORDERED that:

1. The Motion is GRANTED as set forth herein.

2. Pursuant to 11 U.S.C. § 327(a), the Debtor is authorized to employ and retain Wilkerson, Inc. as its sale consultant on the terms set forth in the Sale Consultant Agreement (Exhibit A), as modified by this Order.

3. Wilkerson shall be compensated solely on a commission basis as follows:

    a) An eleven percent (11%) commission on the gross sale price of all jewelry sold;

    b) A four percent (4%) commission on the gross sale price of all large diamonds sold (as set out in the agreement);

    c) Wilkerson's commissions shall be payable weekly upon submission of an invoice reflecting that week's closed transactions.

4. All expenses connected with the Program shall be the responsibility of Debtor including, but not limited to:

    a) weekly stipend of $1,050.00 to the Consultant;

    b) a one-time travel fee in the amount of $400.00 for consultant;

    c) advertising costs;

    d) the cost of all consignment memo merchandise sold at the Program, and

    e) to the extent these expenses are fronted by Wilkerson, Debtor may also reimburse Wilkerson payable weekly, within seven (7) business days after submission of a written invoice to the Debtor reflecting that week's expenses.

5. In lieu of filing interim or final fee applications, Wilkerson shall, within three (3) business days after the close of each week, submit to the United States Trustee and the Subchapter V Trustee a written report (the "Weekly Report") setting forth (i) that week's gross sales, (ii) the commissions earned, and (iii) any reimbursable expenses, including all advertising costs. The United States Trustee and the Subchapter V Trustee shall have

seven (7) days from service of each Weekly Report to file an objection with the Court. If no timely objection is filed, the Debtor is authorized to pay the commissions and reimburse the expenses set forth in the Weekly Report without further order of the Court. Nothing herein shall preclude Wilkerson from filing such reports with the Court or from filing fee applications.

6. All consignment memo merchandise shall be separately accounted for, and the Debtor and Wilkerson shall implement controls sufficient to track and segregate such consignment inventory from the Debtor's own inventory.

7. Wilkerson is authorized to market and to advertise the sale by referring to it in materials displayed or provided off-site as a "Retirement Sale and Store Closing" utilizing the address of the store, and in on-site outdoor sign(s) approved for use by the Landlord identifying the "Retirement Sale." Wilkerson's marketing and advertising of the sale shall not include: (i) banners, displays, or other signage located on-site, on the property immediately adjacent to The District, or the roads leading to The District's entrances, that advertise a going-out-of-business, bankruptcy, store closing or other similar sale at The District; (ii) other off-site sale marketing or advertising of any kind that refers to the sale using non-approved off-site marketing terminology such as going-out-of-business, bankruptcy, auction or other similar terms; and (iii) off-site sale marketing or advertising, including via social media, that mentions The District by name or otherwise "tags" The District.

8. Notwithstanding any provision of the Sale Consultant Agreement or this Order to the contrary, any promise of or limitation on indemnification in favor of Wilkerson shall not apply to, and Wilkerson shall not be indemnified for, any claim, cost, or expense arising

from Wilkerson's bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct. Any claim for indemnification shall be subject to court approval.

9. Wilkerson shall maintain insurance on all memo merchandise. Debtor shall provide insurance for Debtor's merchandise.

10. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

#END OF ORDER#

Agreed as to form:

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr., (MSBN 103469)
Jennifer A Curry Calvillo (MSBN 104367)
The Rollins Law Firm, PLLC
P.O. Box 13767
Jackson, MS 39236
(601) 500-5533
trollins@therollinsfirm.com
Attorneys for Beckham Jewelry, LLC

/s/ Robert B. Ireland, III
Robert B. Ireland, III (MSBN 100708)
Watkins & Eager PLLC
Post Office Box 650
Jackson, Mississippi 39205-0650
(601) 965-1900
rireland@watkinseager.com
Attorney for TDLDC Retail I, LLC

/s/ Craig M. Geno
Craig M. Geno; (MSBN 4793)
Law Offices of Craig M. Geno, PLLC
601 Renaissance Way Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
Subchapter V Trustee

/s/ Steven Usry
STEVEN USRY (MSB #100922)
Trial Attorney
United States Department of Justice
Office of The United States Trustee
501 East Court Street, Suite 6-430
Jackson, MS 39201
(601) 965-5247
steven.usry@usdoj.gov

# AGREEMENT

This agreement (the "Agreement") entered into by and between **BECKHAM JEWELRY, LLC D/B/A BECKHAM CUSTOM JEWELRY CO.**, (hereinafter referred to as "CLIENT"), and **BOBBY WILKERSON, INC.**, (hereinafter referred to as "WILKERSON"), is for the purpose of planning and conducting a promotional sale of CLIENT'S stock of merchandise located at **120 DISTRICT BLVD., STE. D110, JACKSON, MS 39211** (the "Premises").

*The parties acknowledge that this Agreement has been reviewed and approved by the United States Bankruptcy Court for the Southern District of Mississippi in the Order Authorizing Employment of Bobby Wilkerson, Inc. as Sale Consultant (the "Employment Order"). In the event of any inconsistency, conflict, or ambiguity between the terms of this Agreement and the Employment Order, the provisions of the Employment Order shall govern and supersede this Agreement, and this Agreement shall be deemed automatically amended to conform to the Employment Order without further action by either party.*

**1. EVENT PROGRAM**: WILKERSON shall provide to CLIENT a complete event program (the "Program") including, but not limited to, printed materials, pricing materials, and tags, as well as specialized advertising such as newspaper ads, radio spots and banners ("Program Materials"). All printed materials and specialized advertising materials are copyrighted by WILKERSON and are for the exclusive use of CLIENT only within the time frame of the Agreement and are not to be copied, distributed, or used, directly or indirectly, by CLIENT or by any other person or entity other than as set forth herein. All Program Materials whether or not protected by federal copyright will remain the property of WILKERSON and will be removed by WILKERSON at the conclusion of the Program.

**2. PROGRAM CONSULTANT**: WILKERSON shall also recommend an independent consultant (hereafter Consultant) who will assist and advise CLIENT in the planning, supervision,



1

BECKHAM CUSTOM JEWELRY: 2025

and management of the Program. The Consultant will arrive at the Premises on or about the **30th day of June, 2025** and will remain at such location for the duration of the Program.

**3. DURATION OF PROGRAM**: WILKERSON and CLIENT agree that the Program shall begin with a mailing on or about **July 3, 2025** (hereafter "Commencement Date") announcing a private sale on or about **July 8, 2025**, and to be concluded at the discretion of WILKERSON, but in no case later than **August 16, 2025** (hereafter "Contractual Ending Date"). The Commencement Date through the Contractual Ending Date is hereafter the "Sale Term".

**4. COMPENSATION**: In consideration for providing the services, advertising development and creativity, newspaper camera-ready ads, and Sales Consultant, CLIENT shall pay to WILKERSON as compensation a fee of **11%** of the total net sales generated during the Sale Term. Total net sales (hereafter Total Net Sales) is defined as the total gross sales (including, but not limited to layaway, charge, credit and cash sales), minus repairs, sales tax and credit card fees. Collections of layaways and accounts receivable during the Sale Term which were on the books prior to the beginning of the Program (a list of these items shall be provided to WILKERSON by CLIENT prior to the beginning of the Program) are not included as Total Net Sales. Notwithstanding anything contained herein to the contrary, the commission paid to WILKERSON on the sale of natural diamond solitaires of one carat or larger shall be 4% of net sales. In the event said natural diamond of one carat or larger is mounted and sold, then WILKERSON shall be paid a commission of 4% of net sales on the natural diamond and its normal commission as set out herein on the mount.

**5. EXPENSES**: All expenses connected with the Program shall be the responsibility of CLIENT including, but not limited to:

    a. weekly stipend of $1,050.00 to the Consultant;

    b. a one-time travel fee in the amount of $400.00 for consultant;

    c. the cost of all consignment memo merchandise sold at the Program, and

    d. all unpaid invoices owed WILKERSON.

**6. PAYMENT OF FEES**. WILKERSON'S fee shall be paid on Tuesday mornings by check or bank draft, payable to WILKERSON. The first fee payment shall be due on Tuesday morning, **July 15, 2025** and shall include the percentage of Total Net Sales due WILKERSON as set forth herein plus all charges for signs, supplies, and all consignment memo merchandise sold to date as set forth herein. Each remaining weekly fee payments shall be made each Tuesday morning thereafter and shall include the percentage of Total Net Sales due WILKERSON from that week, charges for additional supplies that have not been paid for, and the cost of all consignment memo merchandise sold that week. Any outstanding balance due WILKERSON hereunder is payable in full on the second business day after the Contractual Ending Date.

Also payable with the first fee payment but *paid directly to the Consultant* is the one-time travel fee of $400.00 and the stipend for arrival day to date. Each remaining weekly stipend payments shall be made to the Consultant on each Tuesday morning for that week.

**7. DISBURSEMENTS:** WILKERSON'S agent shall be given complete access during the term of this Program to all financial records associated with the Program, including any records indicating the revenue and disbursements associated with the Program, sales tickets, bank deposit receipts, and well as any disbursement records. *CLIENT shall reimburse to WILKERSON for any monies advanced on behalf of CLIENT relating to the Program.*

**8. ADDITIONAL INVENTORY:** If permitted locally, WILKERSON shall have the right to supplement the Program with additional inventory. Title to such additional inventory shall remain vested in WILKERSON before, during and after the Program. WILKERSON shall have the absolute and unconditional right to file a financing statement and/or security agreement on all additional inventory supplied by WILKERSON.

**9. INSURANCE:** CLIENT shall provide complete insurance coverage on all inventory located at the Premises, as well as any additional inventory provided by WILKERSON or obtained for CLIENT by WILKERSON from other vendors. CLIENT shall provide WILKERSON with a certificate of insurance showing WILKERSON as a loss payee for all additional inventory (no

additional inventory will be shipped until this Certificate of Insurance is provided), and as additional insured on liability insurance. CLIENT further agrees to diligently pursue any claim under said policy or policies and will forthwith upon their collection pay over to WILKERSON the amount of the proceeds relating to or resulting from loss or damage to WILKERSON'S additional inventory or any additional inventory WILKERSON obtained for CLIENT.

**10. RESTRICTIONS**: From the date of execution of this Agreement until the completion of the Program, CLIENT shall not (*i*) make any retail sales other than in the ordinary course of business and at customary prices that CLIENT'S customers are accustomed to, or (*ii*) advertise or conduct a "Retirement, Liquidation, Closing, Moving, or Fire sale" of any sort until the commencement of the Program contemplated herein unless otherwise authorized by WILKERSON. No employee or principal of CLIENT shall make any sales of jewelry within or outside of CLIENT'S premises other than for the benefit of the Program.

**11. ENFORCEMENT**: In the event that any provision contained herein should be declared void, illegal or otherwise unenforceable, such provisions will be deemed to be severable and all remaining provisions of the Agreement will remain in full effect.

**12. DEFAULT AND REMEDIES**. In the event of default or failure of CLIENT to comply with any term, condition or obligation stated herein, WILKERSON may: (*i*) recall any Consultant or other personnel; and (*ii*) declare immediately due all fees or other sums due WILKERSON.

**13. COMPLETE AGREEMENT**: The provisions contained herein and the provisions of any consignment security agreement entered into between the Parties, constitute the full and complete agreement between the parties. No agent of WILKERSON has the authority to waive or modify this Agreement or to bind WILKERSON by making any promises or representations not contained herein. It is expressly understood that there are no agreements or guarantees concerning promotion profits, gross proceeds or percentage of items to be sold, expressed, written or implied by WILKERSON other than those set forth herein. The liability of WILKERSON to CLIENT for any

4

BECKHAM CUSTOM JEWELRY: 2025

Docusign Envelope ID: 7A7FA609-9614-42EF-9BFB-00EF76836486

reason arising from or out of the execution, performance, or attempted execution or performance of this Agreement will be limited to the fees to date due and payable, to WILKERSON, hereunder.

In no event shall this Agreement be deemed to create a partnership or joint venture between WILKERSON and CLIENT, nor shall WILKERSON be liable for any obligations, liabilities, income or sales taxes of CLIENT.

EXECUTED THIS _Mon, 23_ DAY OF _June_, 2025.

BECKHAM JEWELRY, LLC
D/B/A BECKHAM CUSTOM JEWELRY CO.

By: _____
OWNER/AUTHORIZED AGENT

Title: _Owner_

BOBBY WILKERSON, INC.

By: _____
BWI SELLING AGENT

Date: _6-24-25_

APPROVED AND ACCEPTED:

_____
Authorized Agent/Officer