United States Bankruptcy Court
Southern District of Mississippi

In re:                                                                  Case No. 25-01234-JAW

Beckham Jewelry, LLC                                                    Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0538-3                     User: mssbad                          Page 1 of 2

Date Rcvd: Sep 08, 2025                  Form ID: pdf012                    Total Noticed: 1

The following symbols are used throughout this certificate:

**Symbol**     **Definition**

+              Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Sep 10, 2025:**

**Recip ID**            **Recipient Name and Address**
dbpos            +   Beckham Jewelry, LLC, 120 District Blvd, Ste D110, Jackson, MS 39211-6304

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Sep 10, 2025                       Signature:            /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on September 8, 2025 at the address(es) listed below:**

**Name**                              **Email Address**

Christopher J. Steiskal, Sr.
                                      on behalf of U.S. Trustee United States Trustee csteiskal@cmgenolaw.com
                                      kcarter@cmgenolaw.com;csteiskal@ecf.courtdrive.com

Craig M. Geno
                                      cmgeno@cmgenolaw.com  kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com

Craig M. Geno
                                      on behalf of Trustee Craig M. Geno cmgeno@cmgenolaw.com  kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com

Jennifer A Curry Calvillo
                                      on behalf of Debtor In Possession Beckham Jewelry  LLC jennifer@therollinsfirm.com,
                                      jennifer.curry.ecf@gmail.com,CalvilloJR81745@notify.bestcase.com

Robert B. Ireland, III
                                      on behalf of Creditor TDLDC Retail I  LLC rireland@watkinseager.com, kleblanc@watkinseager.com

District/off: 0538-3

User: mssbad

Page 2 of 2

Date Rcvd: Sep 08, 2025

Form ID: pdf012

Total Noticed: 1

Steven Usry

on behalf of U.S. Trustee United States Trustee steven.usry@usdoj.gov

Thomas Carl Rollins, Jr

on behalf of Debtor In Possession Beckham Jewelry  LLC trollins@therollinsfirm.com,
jennifer@therollinsfirm.com;trollins.therollinsfirm.com@recap.email;notices@therollinsfirm.com;kerri@therollinsfirm.com;brea
nne@therollinsfirm.com;TRollins@jubileebk.net;calvillojr81745@notify.bestcase.com

United States Trustee

USTPRegion05.JA.ECF@usdoj.gov

William E McLeod

on behalf of Creditor McLeod & Associates  P.A. bmcleod@eptaxlaw.com,
lmcallister@eptaxlaw.com;mphelps@eptaxlaw.com;jlewis@eptaxlaw.com

TOTAL: 9



**SO ORDERED,**



**Judge Jamie A. Wilson**
**United States Bankruptcy Judge**
**Date Signed: September 8, 2025**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:   Beckham Jewelry, LLC, Debtor**          **Case No. 25-01234-JAW**
                                                          **CHAPTER 11**

### AGREED ORDER APPROVING MOTION FOR AUTHORITY
### TO ENTER INTO COMMERCIAL LEASE AS AMENDED

THIS MATTER came before the Court on the Debtor's Motion for Authority to Enter into Commercial Lease Agreement (the "Motion," Dkt. 113), the Subchapter V Trustee's Objection (Dkt. 124), and the parties' announcement that they have resolved the objection by an amendment to the lease converting it to a month-to-month tenancy. Having considered the record and the agreement of the parties, the Court finds and orders:

IT IS THEREFORE THAT:

1. The Motion is GRANTED on the terms set forth herein.

2. The Full Service Commercial Office Building Lease with Litchfield Carlyle, LLC (the "Lease") as amended by the First Amendment to Lease Agreement dated August 29, 2025 (the "Amendment," converting the Lease to a month-to-month tenancy on 30 days' notice, with base rent of $1,600/month) is APPROVED pursuant to 11 U.S.C. §§ 363 and 365, and the Debtor is authorized to enter into and perform under the Lease, as amended, on a month-to-month basis in the ordinary course. The Amendment is attached hereto as Exhibit A.

3. From and after the date of entry of this Order, sums due under the Lease, as amended, shall be paid in the ordinary course and shall constitute actual, necessary costs and expenses of preserving the estate under 11 U.S.C. § 503(b)(1)(A), subject to all parties' rights at confirmation.

4. Nothing in this Order constitutes (a) a finding regarding feasibility or plan confirmation; (b) a determination regarding any pre-Order amounts; or (c) a waiver of any party's rights under 11 U.S.C. § 365 with respect to assumption/rejection. All such rights are expressly reserved.

5. The Court retains jurisdiction to enforce and interpret this Order.

#END OF ORDER#

AGREED BY:

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr. (MS Bar No. 103469)
The Rollins Law Firm
P.O. Box 13767
Jackson, MS 39236
601-500-5533
Counsel for Debtor

/s/ Craig M. Geno
Craig M. Geno; (MSBN 4793)
Law Offices Of Craig M. Geno, PLLC
601 Renaissance Way Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
Subchapter V Trustee

## FULL SERVICE COMMERCIAL OFFICE BUILDING LEASE
### Dated August 5, 2025__

THIS SUMMARY OF BASIC LEASE PROVISIONS (the "Basic Lease Provisions") of the attached Commercial Office Building Lease (the "Lease") entered into by and between Landlord and Tenant is hereby made a part of the Lease. In the event of any conflict, inconsistency or ambiguity between the Basic Lease Provisions and the attached Lease, the attached Lease shall govern.

**A.** **Landlord:** "Landlord" means Litchfield Carlyle, LLC, and a Mississippi Limited Liability Company.

**B.** **Landlord's Address for Notice:**
Speed Commercial Real Estate
c/o Jeff Speed
P.O. Box 806
Jackson, MS 39158
With a required electronic copy to jeff@speedcres.com.

**C.** **Tenant:** Beckham Custom Jewelry, LLC

**D.** **Tenant's Address for Notice:**

Brian Beckham
1867 Crane Ridge Blvd, Suite 150A
Jackson, MS 39216

**E.** **Development:** "Development" Two story office building bearing the municipal addresses of 1867 Crane Ridge Drive, "Building A "as well as all other improvements thereon.

**F.** **Building:** "Cypress Ridge" means the office building located at 1867 Crane Ridge Drive Jackson, MS. "Building." Means Building A.

**G.** **Leased Premises:** "Leased Premises" means the office space on the 1st floor(s) of Building A of the Cypress Ridge Office Building Suite _150A_, consisting of approximately _1400 +/-_ square feet.

**H.** **Tenant's Pro-Rata Share:** 3.1 %

**I.** **Lease Term:** The "Lease Term" of the Lease shall be 37 months, commencing on September 1 2025 ("Commencement Date") and ending on _September 30, 2028._

**J.** **Monthly BASE Rent:** "Base Rent" means that sum which is payable each month The Rent payable for the Leased Premises during the Lease Term shall be as follows: **$1600.00 per month. As inducement for entering this lease. September 2025 will be abated by landlord.**

**K.** **HVAC Overtime Rate:** Tenant shall pay Landlord an additional fee of 20.00 per hour for using the HVAC system outside the Normal Business Hours **(Monday thru Saturday)** as defined herein.

**L.** **Security Deposit:** $ 1600.00 at lease signing (one month of Base Rent).

**M.** **Option to Renew:** Tenant shall have the right to renew the Lease for two (2) additional two (2) year terms. Rent for each renewal term shall be 10% increase from the immediately preceding term. Such options shall be exercised by written notice from Tenant six (6) months prior to the expiration of the then current term. Tenant forfeits renewal options if tenant has been in monetary default more than two times during the original lease term.

## WITNESSETH:

In consideration of the premises, the mutual covenants hereinafter contained, and each and every act to be performed hereunder by them, Landlord and Tenant hereby enter into the following Lease pertaining to the Leased Premises described herein:

### ARTICLE I - LEASED PREMISES

Landlord hereby lets and demises to Tenant, and Tenant hereby leases from Landlord, for the "Lease Term" and upon the terms and conditions set forth in this Lease, the Leased Premises more particularly described on Exhibit "A" attached hereto.

### ARTICLE II - TERM

If the Lease Commencement Date occurs on a day other than the first day of a month, Rent shall be prorated for the partial month. If, upon the execution of this Lease, the Building or the Leased Premises are under construction and the Leased Premises are not ready for occupancy on the above commencement date of the term, Landlord shall not be liable for any damages thereby, nor shall this Lease be void or voidable, but Tenant shall not be responsible for rent until such time that Landlord can deliver possession, and the term of this Lease shall then commence upon the delivery of possession of the Leased Premises to Tenant ready for occupancy whether or not actually occupied by Tenant, or mere delivery of possession to Tenant if Landlord's preparation of the Leased Premises for Tenant's occupancy is delayed by Tenant's nonperformance of any of its obligations and the ending of the term shall be correspondingly extended.

### ARTICLE III - BASE RENT; ADDITIONAL RENT; OPERATING COSTS

A.      **Rent.**   Tenant covenants and agrees to pay  Rent for the Leased Premises for the full Lease Term at the rates set forth in the Basic Lease Provisions (plus rental payments for any partial month of occupancy prior to the commencement of the first "Lease Year"), which amount shall be payable in monthly installments, without setoff or deduction, without notice or demand, in advance, on or before the 5th day of each month during the Lease Term at the address of Landlord set forth in the Basic Lease Provisions or at such other address or addresses as Landlord may hereafter determine by notice to Tenant.

B.      **Additional Rent.**   In addition to Base Monthly Rent, Tenant shall pay Additional Rent in the amount of Tenant's Pro-Rata Share of Operating Expenses that exceed the Operating Expenses for the Base Year, if any ("Additional Rent"). Tenant's obligation to pay Additional Rent attributable to the Term shall survive the expiration of the Term. Landlord will reconcile after year end of each lease year within commercially reasonable time frame, provide Tenant with information about such reconciliation and invoice Tenant if any overages of expenses are owed based upon the Operating Expenses of the current year that are in excess of the Operating Expenses for the Base Year. These amounts when billed shall be paid to Landlord within 30 days of receipt.

C.  **Operating Expense Base Year.**  The Operating Expense Base per square foot of Rentable Area for the Lease shall be the amount of Operating Expenses for the Building in the calendar year 2025. Estimated expenses $7.50 psf. Tenants pro-rata share of the building is 3.1 %.

### ARTICLE IV - SERVICES AND EXPENSES

Landlord covenants and agrees, so long as the Tenant is not in default under any of the covenants of this Lease beyond any applicable cure period, to furnish for Tenant the following services as provided for herein:

A.      **HVAC Services.** Heating, ventilation and air conditioning to the Leased Premises, as appropriate for the season for the reasonable comfort of Tenant and its employees and invitees, Monday through Saturday between the hours of 7:00 a.m. and 6:00 p.m., and

Saturday between the hours of 8:00 a.m. and 1:00 p.m. (hereinafter, "Normal Business Hours"); Any HVAC service usage beyond the hours set forth above at Tenant's request resulting in additional charges shall be paid for by Tenant. All federal holidays are observed

B. **Utility Services.** Utilities for ordinary use and normal office purposes;

C. **Elevator Services.** Non-attended automatic elevator service;

D. **Janitorial Services.** Included

E. **General Maintenance and Repairs.** Regular maintenance so as to keep in good order, condition and repair, the Development, the Building, the Leased Premises, and Common Area. Any damage caused by Tenant's, Tenant's employees or Tenant's Agents' negligence or willful misconduct shall be reimbursed by Tenant as Additional Rent at Landlord's discretion.

## ARTICLE V - INTERRUPTION OF SERVICES

Landlord does not warrant or guarantee the continued availability of any or all of the utility and elevator services necessary or desirable for the use of the Leased Premises by Tenant. Unless due to the negligence or omission of Landlord, iIn no event shall the interruption, diminution or cessation of such availability be construed as an actual or constructive eviction of Tenant, nor shall Tenant be entitled to any abatement of its rent obligations under this Lease on account thereof.

Landlord reserves the right to stop the service of any or all of the utilities hereinabove described when, in Landlord's sole discretion, such stoppage is necessitated by reason of accident, repairs, inspections, alterations or improvements, until any of the same have been completed. In such event, and provided Landlord manages such stoppages in a commercially reasonable manner, Landlord shall not be deemed guilty of a breach of this Lease, nor shall Tenant be entitled to any abatement of its rent obligations under this Lease on account thereof. In the event the interruption of services is directly caused by Landlords failure to pay for the services to the property, tenants rent shall be abated for the time services are interrupted.

## ARTICLE VI - INSURANCE

Throughout the Lease Term, and any extensions thereof, Tenant shall maintain at its sole cost and expense, (i) fire and extended coverage insurance insuring all alterations and additions made by Tenant to the Leased Premises and all of its fixtures, inventory, furniture and equipment in an amount not less than the full replacement value thereof with the broadest possible coverage ("all risk") insuring against all risks of direct physical loss and (ii) comprehensive general liability coverage insuring against claims of any and all personal injury, death or damage occurring in or about the Leased Premises or the sidewalks and common areas adjacent thereto, with a combined single limit coverage of not less than $1,000,000.

Each of the foregoing insurance policies shall be issued by an insurance company reasonably satisfactory to Landlord and shall name Landlord as an additional insured, as its interests may appear. All such policies shall contain waivers of subrogation as set forth in Article XV "Waiver of Subrogation" hereof. All such policies shall provide that no cancellation or termination thereof or any material modification thereof shall be effective except on 30 days prior written notice to Landlord. Certificates evidencing such insurance shall be delivered to Landlord upon the Lease Commencement Date and each anniversary thereof.

If Tenant installs any electrical equipment that overloads the power lines to the Building, Tenant shall at its own expense make whatever changes are necessary to comply with the requirements of insurance underwriters and insurance rating bureaus and governmental authorities having jurisdiction.

The obligations of Tenant, as contained in this Article, shall inure directly to Landlord's first mortgagee, if any, and shall not be invalidated by any act, neglect or default of Landlord, nor

by any foreclosure or other similar proceeding, or by any change in title or ownership of the Leased Premises.

Tenant Insurance certificate shall include Landlord and Management company as additional insured and shall read:
Litchfield Carlyle LLC and Speed Commercial Real Estate LLC
PO Box 806
Ridgeland, MS. 39158

## ARTICLE VII - MAINTENANCE OF THE BUILDING AND REPAIRS

Landlord shall keep the Building, the Development and the Leased Premises in good condition and repair; provided, however, that if Landlord shall be called upon to perform services or make any such repairs occasioned by the negligent act or omission of Tenant or its agents or employees, the total cost and expense of such repairs shall be borne by Tenant, and such costs shall not be prorated among other tenants of the building.

Subject to Landlord's obligations in the preceding paragraph, Tenant shall also keep the Leased Premises in a clean, sanitary and safe condition in accordance with all directions, rules and regulations. Tenant shall comply with all requirements of laws, ordinances and other rules and regulations that affect the Leased Premises. At the expiration of the Lease Term, Tenant shall surrender the Leased Premises broom clean in as good order as the same is on the day Tenant first opened for business to the public, reasonable wear and tear excepted.

## ARTICLE VIII - COMMON AREAS

From time-to-time Landlord may prescribe Rules and Regulations which shall govern the use of the Leased Premises, Common Areas and the Development. A current copy of which is attached hereto as Exhibit "C" (the "Rules and Regulations"). All Common Areas furnished by Landlord shall be subject to the reasonable control and management of Landlord who shall have the right, and the obligation, from time to time to establish, modify and enforce the Rules and Regulations with respect thereto. Notwithstanding the foregoing, Landlord and Tenant agree that, to the extent the Rules and Regulations contain provisions which conflict with the provisions of this Lease, the provisions of the Lease shall control. Tenant agrees to abide by all such Rules and Regulations at all times during the Lease Term. Landlord further reserves the right to change the area, to rearrange the area, and to restrict or eliminate the use of any Common Areas, and do such other acts in and to Common Areas to change the location of building areas of the Property as Landlord shall reasonably determine, all in the best interests of the Development, the Building and the tenants occupying and using the same. Such actions may not be deemed an eviction of Tenant or a disturbance of Tenant's use of the Leased Premises. Any changes to the Common Areas shall not affect or trigger the recalculation of the Usable Area, Rentable Area or the Common Area factor used to determine the Rentable Area.

## ARTICLE IX - USE OF LEASED PREMISES

The Leased Premises shall be used and occupied by Tenant only for general office & Jewelry use and for no other purpose.

## ARTICLE X - ALTERATIONS AND ADDITIONS

Tenant shall not, under any circumstances, make alterations or additions to the exterior of the building. Also, Tenant shall make no alterations or additions to the interior of the Leased Premises (other than cosmetic changes), without first procuring Landlord's written consent, after delivering to Landlord the plans and specifications for the contemplated changes. If approved by Landlord, Tenant shall promptly pay for the costs associated with any such alterations or additions, and shall indemnify Landlord against liens, costs, damages and expenses incurred by

Landlord in connection therewith, including any reasonable attorney's fees incurred by Landlord, if Landlord shall be joined in any action or proceeding involving such work. Landlord may, at its option, pay sums due in order to release such liens, in which event any such sums paid by Landlord shall be due to Landlord by Tenant, as Additional Rent, upon demand. Under no circumstances shall Tenant commence any such work until Landlord has been provided with certificates evidencing that all the contractors and subcontractors performing such work have in full force and effect adequate workmen's compensation insurance as required by the laws of the State of Mississippi, public liability and builders risk insurance in such amounts and according to terms satisfactory to Landlord. All alterations, additions, improvements and fixtures, shall become the property of Landlord at the time of installation, and shall remain upon and be surrendered with the Leased Premises at the time of termination of this Lease as a part of the Leased Premises.

## ARTICLE XI - WAIVER OF SUBROGATION

Landlord and Tenant agree that, if the interests on which they are required to obtain insurance in connection with the transaction contemplated hereby shall be damaged or destroyed during the Lease Term by a peril or risk insured under the policies of insurance required to be carried by Landlord and Tenant pursuant to Article VII "Insurance" hereof, and whether or not such claim, damage or destruction was caused by the neglect of the other party, neither party shall have any liability to the other or to any insurer of the other for, or in respect of, such claim, damage or destruction, to the extent covered by such insurance; and each party shall insure that the policies of insurance required to be carried by Landlord and Tenant pursuant to Article VII "Insurance" hereof are endorsed with a provision in and by which the insurer designated therein shall waive its right of subrogation against the other. The waiver of subrogation hereby required shall extend only to the risks insured by the policies required hereby.

## ARTICLE XII - DESTRUCTION OF OR DAMAGE TO LEASED PREMISES

Tenant shall give Landlord immediate notice of any damage to the Leased Premises caused by fire or other casualty. If the Leased Premises or the Building is damaged by fire or other casualty to such an extent that same can be repaired within a period of one hundred eighty (180) days, Landlord may, at its option, rebuild or repair, as the case may be, or cancel and terminate this Lease. Unless Landlord notifies Tenant in writing within a period of sixty (60) days after the occurrence of the fire or other casualty that it does not intend to rebuild or repair, it shall then be obligated to rebuild or repair. All work of repairing or rebuilding shall be performed with reasonable promptness, due allowance being made for reasonable delay which may arise by reason of adjustment of loss under insurance policies on the part of Landlord or Tenant and for reasonable delay on account of strike, lockout, governmental regulation, or other cause beyond Landlord's control. Tenant shall be entitled to a remission of rent for any period during which the Leased Premises are wholly unfit for occupancy and to such reduction of rent as shall be just and proportionate for any period during which Tenant is partially excluded from occupancy, such reduction to be in proportion to the extent to which the Leased Premises are unfit for occupancy. If Landlord elects to cancel by giving notice to Tenant within the 60-day period hereinabove provided, this Lease shall thereupon terminate and expire as of the date of the occurrence of the fire or other casualty and all rents shall be prorated to such date.

## ARTICLE XIII - INDEMNIFICATION

Except as concerns losses paid by insurance for which Landlord has waived and hereby does waive the right of subrogation, Tenant shall and hereby does protect, defend, indemnify and save Landlord harmless from and against any and all liability for damages to any person or any property in or upon the Leased Premises, including the personal property of Tenant and Tenant's Agents, and from and against any and all losses, costs, damages, liabilities or expenses (including reasonable attorney's fees) to the extent arising out of to any accident or other occurrence due

directly or indirectly to Tenant's or Tenant's Agents' negligence or willful misconduct, or Tenant's material breach of its obligations under this Lease.

## ARTICLE XIV – ASSIGNMENT AND SUBLETTING

Tenant shall not assign, sell, pledge, mortgage, encumber or in any manner transfer this Lease or any interest therein, nor sublet the Leased Premises or any part or parts thereof, nor permit occupancy by anyone with, through or under it without the prior written consent of Landlord, which consent shall be in Landlord's reasonable discretion. Landlord and Tenant hereby acknowledge that this provision regarding assignment and subletting and Landlord's discretion there over has been fully and freely negotiated. Tenant shall pay to Landlord a fee equal to the reasonable out of pocket costs expended by Landlord to compensate Landlord for the time and expense of reviewing any request and documentation regarding assignment or subletting. Landlord shall have fifteen (15) business days from the date of Landlord's receipt of Tenant's written request for consent, accompanied by a description of the proposed assignee, a description of the proposed assignee's business experience and the most recent financial statements for the proposed assignee, within which to determine whether or not Landlord's consent shall be granted. Landlord shall have no liability of any kind for not consenting to an assignment or subletting. Any profit from a Sublet or assignment to be shared with Landlord equally (50/50).

In addition to any other reasons, Landlord may withhold its consent to any such assignment, letting or subletting, if the same would result in:

A.    Use of the Leased Premises by any party, business, or lessee who proposes to conduct a business therein which is either not in conformance with the use of the Leased Premises required pursuant to Article XIII "Use of Leased Premises" hereof or is not otherwise compatible, in Landlord's opinion, with other uses in the Building or the Project; or

B.    Occupation of the Leased Premises by any party, business, or lessee who is then a lessee of the building, so long as Landlord has or will have during the ensuing six (6) months, suitable space for rent in the building; or

C.    Occupation of the Leased Premises by a party whose financial condition and credit rating is not equal to or better than that of Tenant (as determined by Landlord); or

D.    Occupation of the Leased Premises by a party whose business is of a character which does not, in Landlord's opinion, comport with the character of the Building or the Project.

Any sublease of the Leased Premises executed by Tenant shall incorporate this Lease (the "Underlying Lease") in its entirety and be subject to its terms. The sublease shall also require the sub lessee to attorn to Landlord at Landlord's option in the Event of Default by Tenant under the terms of the Underlying Lease, and Tenant does hereby grant Landlord the irrevocable power of attorney to affect the same. Consent by Landlord to one or more assignments of this Lease or to one or more subletting's of the Leased Premises shall not operate as a waiver of Landlord's rights under this Article as to any guarantor of Tenant of any of its obligations under this Lease, nor be construed or taken as a waiver of any Landlord's rights or remedies under this Lease.

In the event Landlord allows assignment or subletting hereunder, neither Tenant nor Guarantors shall be released from any obligations under this Lease. Tenant and Guarantor shall hereby agree to remain liable for all lease obligations. Neither the assignee of Tenant nor the sub lessee of Tenant shall have any option to extend the Lease Term, notwithstanding anything contained in this Lease to the contrary, such options to extend the Lease Term being personal to Tenant only.

No interest in this Lease shall pass to any trustee or receiver in bankruptcy, to any estate of Tenant, to any assignee of Tenant for the benefit of creditors, or to any other party by operation of law or otherwise without Landlord's consent.

No consent to assignment or subletting shall be granted if Tenant is then in default under this Lease.

## ARTICLE XV - LANDLORD'S SALE OR TRANSFER

In the event of any sale or transfer of the Leased Premises, or real property of which the Leased Premises are a part, by Landlord, including sales by foreclosure or a deed in lieu thereof, Landlord shall be, and is, entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act or omission occurring after the consummation of sale or lease; and the purchaser or lessor shall, during the period of its ownership or lease term, be deemed without any further agreement between the parties to have assumed and agreed to carry out any and all of the covenants and obligations of Landlord under this Lease. All subsequent purchasers or lessors shall similarly be freed and relieved of all liability hereunder subsequent to the date of such sale or lease by them. In the event of any such sale or lease, and subject to Landlord's successor-in-interest agreeing to be bound by the terms of this Lease and assume Landlord's obligations as Landlord hereunder, Tenant agrees to attorn to and become Tenant of Landlord's successor-in-interest.

## ARTICLE XVI - DEFAULT

This Lease is made on the condition also that, if any one or more of the following events (herein referred to as an "Event of Default") shall happen, Tenant shall be in default of its obligations under this Lease:

**A.** **Rent Payments.** Tenant shall default in the timely payment of the Base Rent, Additional Rent or any other amounts payable hereunder, and such default shall continue for five (5) days following notice from Landlord that such payment was due and remains unpaid; or

**B.** **Non-Monetary Events.** Tenant shall neglect or fail to perform or observe any of the other covenants herein contained on Tenant's part to be performed or observed, and Tenant shall fail to remedy the same within thirty (30) days after Landlord shall have given to Tenant notice specifying such neglect or failure (or within such period, if any, as may be reasonably required to cure such default, if the nature of such default is such that it cannot be cured within said thirty (30) day period, provided that Tenant shall have commenced to effect such cure and shall proceed with due diligence to complete such cure); or

**C.** **Bankruptcy.** Tenant shall (i) be adjudicated a bankrupt or insolvent, or (ii) file or threaten to file a petition in bankruptcy or for reorganization or for the adoption of an arrangement under the Bankruptcy Act (as now or in the future amended), or (iii) make an assignment of its property for the benefit of its creditors; or

**D.** **Vacation or Abandonment.** Tenant shall vacate or abandon the Leased Premises for more than thirty (30) consecutive days (absent an event of casualty or required by force of law).

In the event of any one or more such Events of Default, Landlord shall have the right, at its election, provided Landlord has given at least thirty (30) days' prior written notice to Tenant then or at any time thereafter and while such Event of Default shall continue, to either:

**1.** Give Tenant written notice of Landlord's intention to terminate this Lease on the date of such given notice or any later date specified therein, and on such specified date Tenant's right to possession of the Leased Premises shall cease and this Lease shall thereupon be terminated; or

**2.** By force of law after complying with legal requirements, Landlord may take possession pursuant to legal proceedings or any notice provided for by law. After such proceeding, Landlord may, from time to time, without terminating this Lease, relet the Leased Premises, or any part thereof, on behalf of Tenant for such term or terms, and at such rent or rents, and upon such other terms and conditions as Landlord may deem advisable (which may include concessions and free OR reduced rent) with the right to make alterations and repairs to the Leased Premises. No such re-entry or taking of possession of the Leased Premises by Landlord shall be construed as an election on Landlord's part to terminate this Lease, unless a

written notice of termination, specifically stating Landlord's intention to terminate, be given to Tenant.

In the event Landlord does not elect to terminate this Lease, but on the contrary, elects to take possession, then such repossession shall not relieve Tenant of its obligations and liability under this Lease, all of which shall survive such repossession. In the event of such repossession, Tenant shall pay to Landlord as rent:

(i)  The Base Rent and other sums as hereinbefore provided, which would be payable hereunder if such repossession had not occurred (and then reduce to present value); less

(ii)  The net proceeds, if any, of any reletting, or the value of Landlord's use, if any, of the Leased Premises after deducting all of Landlord's reasonable expenses in connection with such reletting, including, but without limitation, all repossession costs, brokerage commissions, legal expenses, attorney's fees, expenses of employees, necessary alteration costs and expenses of preparation for such reletting.

Tenant shall pay such rent to Landlord on the days on which the Base Rent would have been payable hereunder if possession had not been retaken, and Landlord shall be entitled to receive the same from Tenant on each such day. If either Landlord or Tenant shall be required to commence any action or proceeding to collect the foregoing amounts, or to enforce any other obligation of Landlord or Tenant under this Lease, Landlord or tenant, as the case may be, shall be entitled to a reimbursement of all costs and expenses incurred in said matter, including reasonable attorney's fees.

If this Lease is terminated by Landlord, by reason of any default by Tenant, or terminated by a court of lawful jurisdiction, Landlord shall be entitled to recover as damages from Tenant the excess, if any, of the Base Rent reserved in this Lease for the balance of the Lease Term over the then reasonable rental value of the Leased Premises for the same period, plus all of Landlord's costs of reletting the Leased Premises including, but not limited to, repair, alteration, build out and preparation of said Leased Premises for reletting, and any brokerage commission paid or due to any agent of Landlord, which amounts shall be immediately due and payable by Tenant to Landlord. In addition, Landlord shall also recover from Tenant any rent exemption, deferred rent or excused rent which Landlord may have granted to Tenant as an inducement to Tenant's execution hereof, it being understood that Landlord's granting of such a rent holiday is in consideration of Tenant's compliance with the terms and provisions hereof. It is agreed that the then "reasonable rental value" shall be the amount of rent which Landlord may then reasonably obtain as rent for the remaining balance of the Lease Term (including concessions and free rent, if necessary). In addition, all costs incurred in connection with collecting such sum, including reasonable attorney's fees and costs, shall be recoverable by Landlord from Tenant. Any such damages payable to Landlord pursuant to this paragraph shall be payable, at Landlord's option, in a lump sum as aforesaid, in equal monthly installments throughout the remainder of the Lease Term, or at the end of the Lease Term (in which event the "reasonable rental value" shall mean the actual rental received by Landlord).

Notwithstanding anything contained in this Lease or in the Mississippi statutes to the contrary, Tenant hereby waives any and all rights it may have to cure any Event of Default more than three (3) times in any calendar year. In the event of the foregoing occurrence of an "Event of Default" more than three (3) times in any calendar year, Tenant shall immediately forfeit the benefit of any deferred rent and/or any unamortized portion of Landlord's tenant finish costs, whether or not accrued at the time of said default. Base Rent for the forfeited periods and any unamortized portion of Landlord's tenant finish costs shall be due on the first of the month following such default.

## ARTICLE XVII - RECALCULATION OF SQUARE FOOTAGE

Base Rent or Tenant's Pro-Rata Share shall not be adjusted or changed as a result of any deviations from construction drawings, miscalculations or adjustments to the Common Area Factor or Rentable and Usable Area's allocated to the Leased Premises once Tenant has taken occupancy of the Leased Premises.

## ARTICLE XVIII - LATE RENT PAYMENT

Any payment of Base Rent, Additional Rent or any obligation hereof which may be satisfied by the payment of money, shall bear interest at the greater of 10% per annum, from and after five (5) days following the date due until paid. Tenant acknowledges that late payments by Tenant to Landlord of such rent and other charges will cause Landlord to incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impracticable to fix. Therefore, if any installment of rent due from Tenant is not received by Landlord within five (5) days of when due, Tenant shall pay to Landlord an additional amount equal to 10% of the sum of Base Rent and the Additional Rent as a late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Tenant. Any acceptance of any late charge shall not constitute a waiver of Tenant's default with respect to the overdue amount, or prevent Landlord from exercising any of the other rights and remedies available to Landlord. Additionally, Tenant shall pay a $100 charge for any checks written to Landlord which are returned due to insufficient funds.

## ARTICLE XIX - FORFEITURE OF PERSONALTY

Tenant agrees that within fifteen (15) days of termination of this Lease or repossession of the Leased Premises by Landlord without termination, whichever first occurs, by way of default or otherwise, it shall remove all personal property for which it has the right to ownership. Any and all such property of Tenant not removed within said fifteen (15) day period shall irrevocably become the sole property of Landlord. Tenant waives all rights to notice and all common law and statutory claims and causes of action which it may have against Landlord subsequent to said fifteen (15) day period as regards the storage, destruction, damage, loss of use and ownership of the personal property affected by the terms of this paragraph. Tenant acknowledges Landlord's need to relet the Leased Premises upon termination of this Lease or repossession of the Leased Premises, and understands that the forfeitures and waivers provided herein are necessary to aid said reletting.

## ARTICLE XX - NON-DISTURBANCE AND SUBORDINATION

This Lease shall be subject and subordinate to: (a) any reciprocal easement agreements or any other easements and (b) the lien of any first mortgage or other mortgage in favor of the beneficiary of said first mortgage, which Landlord may now or hereafter place upon the Leased Premises and the Building, and to all terms, conditions and provisions thereof, to all advances made, and to any renewals, extensions, modifications or replacements thereof; provided, however, that if this Lease is in full force and effect, the right of possession of Tenant to the Leased Premises and Tenant's rights arising out of this Lease shall not be affected or disturbed by the mortgagee in the exercise of any of its rights under the mortgage or the note secured thereby, nor shall Tenant be named as a party defendant to any foreclosure of the lien of mortgage, nor in any other way be deprived of its rights under this Lease. In the event that the mortgagee shall agree to the sale of the Leased Premises pursuant to the exercise of any rights and remedies under the mortgage, or otherwise, such sale shall be made subject to this Lease and the rights of Tenant hereunder. Tenant agrees to attorn to the mortgagee or such person who may acquire title as its new landlord, and the Lease shall continue in full force and effect as a direct lease between Tenant and mortgagee or such other person, upon all the terms, covenants and agreements set forth in this Lease. Tenant shall, without further negotiation, execute or obtain execution of such

instruments as may be necessary to effectuate said subordination, sale, foreclosure, and attornment; should Tenant fail to execute same; Tenant hereby appoints Landlord as its attorney-in-fact to execute such documents in Tenant's place. Such instruments may require Tenant to notify the mortgagee of defaults by Landlord hereunder, to make rental payments to the mortgagee upon proper notice, and to allow the mortgagee a reasonable time to cure defaults hereunder, if Landlord has not done so.

## ARTICLE XXI - NOTICES

All notices to be given hereunder by either of the parties shall be in writing. Any notice may be served by Landlord upon Tenant personally by delivering the same to either the address set forth in the Basic Lease Provisions, or to the Leased Premises. Any notice shall also be deemed duly served by either party if sent by nationally recognized overnight courier, with proper postage prepaid, addressed to each party at its address set forth in the Basic Lease Provisions. Either party may change the address to which notices may be sent by delivering a copy thereof to the other party in the manner aforesaid. If service shall be made by nationally recognized overnight courier, such service shall be complete as of the next day following the mailing of such notice in the manner aforesaid.

## ARTICLE XXII - SECURITY DEPOSIT- ONE MONTHS RENT $4441.33

## ARTICLE XXIII – RELOCATION (Intentionally Deleted by Drafter)
## ARTICLE XXIV - MISCELLANEOUS

    **A.**    **Covenant Dependency.** The obligation of Tenant to pay rent hereunder is independent of each and every other Covenant, duty or obligation of Landlord herein, and is not subject to deduction or offset.

    **B.**    **Liens.** Tenant shall not permit mechanics', materialmen, or other liens against the building in connection with any labor, materials, equipment, or services furnished, or claimed to have been furnished. If any such lien shall be filed against the building as a result of the foregoing, Tenant shall cause it to be discharged at its sole cost and expense; provided, however, that if Tenant desires to contest any such lien, it may do so, so long as the enforcement thereof is stayed. In the event such a stay is obtained Tenant shall obtain title insurance in the amount of the lien or liens (including interest and costs) for the benefit of Landlord should Landlord desire the same for any period during which a lien or liens exist on the Project. In such event, Tenant shall, if necessary, pay required title insurance premiums, post bond sufficient to satisfy the title insurer's requirements, pay escrow costs and fees, pay the reasonable attorney's fees of Landlord, and sign indemnity agreements in favor of the title insurer.

    **C.**    **Relationship of Parties.** Nothing contained herein shall be deemed or construed by the parties hereto, nor by any third party, as creating the relationship of principal and agent or a partnership or a joint venture between the parties hereto, it being agreed that neither the method of computation of rents or any other provisions set forth herein nor any acts of the parties herein shall be deemed to create any relationship between the parties hereto other than the relationship of Landlord and Tenant.

    **D.**    **Representations.** Landlord and Tenant each hereby acknowledge and agree that they have not relied upon any statements, representations, agreements or warranties, except such as are expressed in this Lease.

    **E.**    **Amendments or Modifications.** No amendment or modification of this Lease or any approvals or permissions of Landlord required under this Lease shall be valid or binding unless reduced to writing and executed by the parties hereto in the same manner as the execution of this Lease.

    **F.**    **Grammatical Changes.** Wherever the words "Landlord" and "Tenant" are used in this Lease, they shall include "Landlords" and "Tenants" and shall apply to persons, men and

women, companies, partnerships and corporations. Wherever the words "mortgage" or "mortgages" are used herein the same shall be deemed to include a deed of trust or trust deed, and the word "lender" shall include a mortgagee of a mortgage or a beneficiary of a deed of trust or trust deed. For purposes of this Lease, the term "rent" as used herein shall be deemed to mean any and all Base Rent, Additional Rent or other monetary obligations of Tenant hereunder. All references to the Lease Term shall include any extension of the Lease Term, except as otherwise provided. All references to Tenant shall include Tenant's guarantors, assignees or sub lessee. All reference to the singular shall include the plural, and vice versa.

G.   **Section Headings.**   The section headings are inserted herein only for convenience of reference and shall in no way define, limit or describe the scope or intent of any provisions of this Lease.

H.   **Binding Effect.**   Subject to the provisions hereof, the benefits of this Lease and the burdens hereunder shall respectively inure to and be binding upon the heirs, successors, personal representatives and assigns of the parties.

I.   **Force Majeure.**   Whenever a period of time is herein provided for either party to do or perform any act or thing, except for the payment of monies by Tenant and except as may otherwise be expressly set forth herein, there shall be excluded from the computation of such period of time any delays due to strikes, riots, acts of God, shortages of labor or any cause or causes, whether or not similar to those enumerated, beyond the parties' reasonable control or the reasonable control of their agents, servants, employees and any contractor engaged by them to perform work in connection with this Lease.

J.   **Personal Property Taxes.**   Tenant shall pay before delinquency any personal property taxes attributable to the furniture, fixtures, merchandise, equipment, or other personal property situated on the Leased Premises. If any such personal property taxes are levied against Landlord or Landlord's property, and if Landlord pays the same (which Landlord shall have the right to do) or if the assessed value of Landlord's premises is increased by the inclusion therein of a value placed on such property, and if Landlord pays the taxes based on such increased assessment (which Landlord shall have the right to do), Tenant, upon demand, shall repay to Landlord the taxes so levied against Landlord or the proportion of such taxes resulting from such increase in assessment.

K.   **Non-Waiver.**   No waiver of condition or covenant of this Lease by either party hereto shall be deemed to imply or constitute a further waiver by such party of the same or any other condition or covenant. No act or thing done by Landlord or Landlord's Agents during the Lease Term shall be deemed an acceptance of a surrender of the Leased Premises, and no agreement to accept such surrender shall be valid unless signed in writing by Landlord. The delivery of Tenant's keys to any employee or agent of Landlord shall not constitute a termination of this Lease unless a written agreement has been entered into with Landlord to this effect. No payment by Tenant, nor receipt from Landlord, of a lesser amount than amounts owed hereunder including but not limited to Base Rent Additional Rent & Holdover Rent shall be deemed to be anything other than payment on an account of the earliest stipulated rent, nor shall any endorsement or statement on any check or any letter accompanying any check, or payment as rent, be deemed an accord and satisfaction, and Landlord shall accept such check for payment without prejudice to Landlord's right to recover the balance of such rent or pursue any other remedy available to Landlord. If this Lease be assigned, or if the Leased Premises or any part thereof be sublet or occupied by anyone other than Tenant, Landlord may collect rent from the assignee, subtenant or occupant and apply the net amount collected to the rent herein reserved, but no such collection shall be deemed a waiver of the covenant herein against assignment and subletting, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the complete performance by Tenant of the covenants herein contained on the part of Tenant to be performed.

**L.** **Reimbursement of Attorney's Fees and Costs.** In the event either party takes legal action against the other in order to enforce the terms of this Lease, the prevailing party shall recover from the other party its reasonable attorney's fees and costs, together with reasonable fees charged by accountants, appraisers and other consultants or experts hired by the prevailing party or its attorneys.

**M.** **Short Form Lease and Notice to Mortgagee.** Landlord and Tenant agree not to place this Lease of record, but upon the request of either party to execute and acknowledge so the same may be recorded, a short form lease shall be prepared indicating the names and respective addresses of Landlord and Tenant, the Leased Premises, the Lease Term, the dates of the commencement and termination of the Lease Term and options for renewal, if any, but omitting rent and other terms of this Lease. Tenant agrees to an assignment by Landlord of rents and of Landlord's interest in this Lease to a mortgagee, if the same be made by Landlord. Tenant further agrees that Tenant will give to said mortgagee a copy of any request for performance by Landlord or notice of default by Landlord, so long as Tenant is provided with the name and mailing address of such mortgagee for purposes of such mailing; and in the event Landlord fails to cure such default, Tenant will give said mortgagee a reasonable period not to exceed thirty (30) days within which to cure the same. Said period shall begin with the last day on which Landlord could cure such default, before Tenant exercises any remedy by reason of such default.

**N.** **Status Statement of Lease.** Tenant agrees, within ten (10) days of request by Landlord from time to time, to execute, acknowledge and deliver to Landlord a status statement of Lease, to the extent that the facts set forth therein are true.

**O.** **Holding Over.** In the event that Tenant remains in possession. after the expiration of this Lease, without execution of a new Lease, Tenant shall be deemed to occupy the Leased Premises as a tenant from month to month, subject to all conditions, provisions and obligations set forth herein insofar as the same are applicable to a month-to-month tenancy, except that Base Rent shall increase to 125% of Base Rent for the last year of the Lease Term or any extension thereof. In addition, Tenant shall pay any damages and hold Landlord harmless from any liability incurred in connection with any claims made by any succeeding occupant based on delay of possession.

**P.** **Unenforceability.** If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws effective during the Lease Term, then and in that event it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby, and it is also the intention of the parties to this Lease that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

**Q.** **Negotiations and Disclaimer.** Each and every provision of this Lease has been independently, separately, and freely negotiated by the parties as if this Lease were drafted by both Landlord and Tenant. The parties, therefore, waive any statutory or common law presumption which would serve to have this document construed in favor of, or against, either party.

In executing this Lease Agreement, Tenant acknowledges and agrees that it has not relied on any statements or representations of the Landlord, its agents, employees or representatives as to the character, type, identity or number of future tenants who may occupy the Project. Tenant further acknowledges and agrees that no promises have been made by Landlord as to the character, type, identity or number of tenants who may eventually occupy the Project.

**R.** **Rights and Remedies.** The remedies of Landlord shall be cumulative, and no one of them shall be construed as exclusive of the other, or any remedy provided by law or equity.

**S.** **Corporate Authority.** Landlord and Tenant each represent and warrant that it has full corporate power and authority to enter into this Lease Agreement and has taken all

corporate action necessary to carry out the transaction contemplated hereby, so that when executed this Lease Agreement constitutes a valid and binding obligation enforceable in accordance with its terms. Tenant shall provide Landlord its corporate resolution authorizing execution of the Lease at the time of said execution and said resolution shall be incorporated herein.

**T.** **Financial Statements.** Intentionally Deleted

**U.** **Limitation of Landlord Liability.** Tenant shall look solely to the estate and property of Landlord in the Development, including the proceeds, if any, of any casualty insurance policies payable to Landlord for any damage to or destruction of the building, for the collection of any judgment (or any other judicial process) requiring the payment of money by Landlord, and no other property or assets of Landlord shall be subject to levy, execution or other enforcement procedure by or for Tenant.

**V.** **Interpretation and Venue.** The terms of this Lease shall be interpreted according to the laws of the State of Mississippi. Tenant consents to the enforcement by Landlord of Tenant's obligations hereunder in the District Court in and for Hinds, County, and Mississippi.

**W.** **Exhibits and Addenda.** The following Exhibits and Addenda attached to this Lease are incorporated herein and made a part hereof by this reference:

Exhibit A          Space Plan
Exhibit B          Landlords Work
Exhibit C          Rules and Regulations

In the event that any Exhibits or Addenda mentioned in this Lease are not attached hereto, the intention to omit them shall be conclusively presumed and their absence shall not vitiate this Lease.

**X.** **Tenant Representations.** In the event Tenant is a corporation, the officers executing this Lease on behalf of Tenant hereby covenant that they are duly authorized by the corporation to execute this Lease, that the corporation is duly organized under the laws of its State of incorporation and that the corporation has the full right and authority to enter into this Lease for the full term hereof. In the event Tenant is a general or limited partnership, the general partner(s) executing this Lease on behalf of Tenant hereby covenant(s) that he (they) is (are) duly authorized by the partnership to execute this Lease, that the partnership is duly organized under the laws of the State in which it was formed and that the partnership has the full right and authority to enter into this Lease for the full term hereof.

**Y.** **Brokerage.** Tenant hereby represents and warrants that Tenant has not been represented and Speed Commercial Real Estate who has acted as Landlord's leasing agent. Tenant shall indemnify Landlord against any expense incurred by Landlord as a result of any claim for brokerage or other commissions made by any other broker, finder, or agent, whether or not meritorious, employed by Tenant or claiming by, through, or under Tenant. Tenant acknowledges that Landlord shall not be liable for any representations by such brokers regarding the Leased Premises, the Building or this Lease transaction.

IN WITNESS WHEREOF, the parties hereto have executed this Lease the day and year first above written.

**LANDLORD:**

**Litchfield Carlyle, LLC**
**A Mississippi Limited Liability Company**                **Landlord's Witness**

By: _____

Its: _____


**TENANT**                                                 Tenant's Witness

**Beckham Custom Jewelry, LLC**
Brian Beckham

By: _____            _____

Its: Brian Beckham   Common member


Exhibit A



## Exhibit B
### Landlords Work

1. Wall off lobby entrances
2. Door installed as seen on plans
3. New wall to separate spaces
4. Paint the space
5. Replace flooring

# EXHIBIT C
## RULES AND REGULATIONS OF THE BUILDING

1. No smoking shall be permitted within any portion of the building or within twenty (20) feet of the building's exterior
doors, including tenant. spaces and common areas.

2. Landlord may provide and maintain a directory for all tenants of the building. No signs, advertisements or notices visible to the general public shall be permitted within (he Project without the prior written consent of landlord. Landlord shall have the right to remove any such sign, placard, picture, advertisement, name or notice placed in violation of this rule without notice to and at the expense of the applicable tenant
.

3. Sidewalks, doorways, vestibules, halls, stairways and other similar areas shall not be obstructed by tenants or used by any tenant for any purpose other than ingress and egress to and from the leased premises and for going from one to another part of the building. At no time shall any tenant permit its employees, agents, contractors or invitees to loiter in common areas or elsewhere in or about the Building or Project.

4. Corridor doors, when not in use, shall be kept closed.

5. Plumbing fixtures and appliances shall be used only for the purposes for which designed, and no sweepings, rubbish, rags, food or other unsuitable material shall be thrown or placed therein. Every tenant shall be responsible for ensuring that its employees, agents, contractors and invitees utilize Common Area restrooms in accordance with generally accepted practices of health, cleanliness and decency.

6. Landlord shall provide all locks for doors into each tenant's leased area, and no tenant shall place any additional lock or locks on any door in its leased area without Landlord's prior written consent. Two keys for each lock on the doors in each tenant's leased area shall be furnished by

Landlord. Additional keys shall be made available to tenants at the cost of the tenant requesting such keys. No tenant shall have any duplicate keys made except by Landlord. Ail keys shall be returned to landlord at the expiration or earlier termination of the applicable lease.

7. A tenant may use microwave ovens and coffee brewers in kitchen or break areas. Except as expressly authorized by landlord in writing, no other appliances or other devices are permitted for cooking or heating of food or beverages in the building. No portable heaters, space heaters or any other type of supplemental heating device or equipment shall be permitted in the building. All tenants shall notify their employees that such heaters are not permitted.

8.. All tenants will refer all contractors, subcontractors, contractors' representatives and installation technicians who are to perform any work within (he Building to landlord before the performance of any work. This provision shall apply to all work performed in the building including, but not limited to installation of telephone and communication equipment, medical type equipment, electrical devices and attachments, arid any and all installations of every nature affecting floors, walls, woodwork, trim, windows, ceilings, equipment and any other physical portion of the building.

9. Movement in or out of the building of furniture or office equipment, or dispatch or receipt by a tenant of any heavy equipment, bulky materiall or merchandise which require the use of elevators, stairways, lobby areas or loading dock areas, shall be restricted to hours designated by Landlord. A tenant must seek landlord's prior approval by providing in writing a detailed listing of any such activity. If approved by Landlord, such activity shall be performed in the manner slated by Landlord.

10.. All deliveries to or from the building shall be made only at such times, in the manner and through the areas, entrances and exits designated by Landlord.

11. No portion of any tenant's leased area shall at any time be used for sleeping or lodging quarters. No birds, animals or pets of any type, with the exception of guide dogs accompanying visually impaired persons, shall be brought into or kept in on or about any tenant's leased area.

12. No tenant shall make or permit any loud or improper noises in the building or otherwise interfere in any way with other tenants or persons having business with them.

13. Each tenant shall endeavor to keep its leased area neat and clean. Nothing shall be swept or thrown into the corridors, halls, elevator shafts. stairways or other common areas, nor. shall tenant, s place any trash receptacles in these areas.

14. No tenant shall employ any person for the purpose of cleaning other than the authorized cleaning and maintenance personnel for the building unless otherwise approved in writing by landlord, The work of cleaning personnel shall not be hindered by a tenant after 5:30 PM local time, and such cleaning work may be done at any time when the optics are vacant, Exterior windows and common areas may be cleaned at any time. To ensure orderly operation of the Building, Landlord reserves the right to approve all concessionaires, vending machine operators or other distributors of cold drinks, coffee, food or other concessions, water, towels or newspapers. No tenant shall install a vending machine in the building without obtaining landlord's prior written approval, which shall not be unreasonably withheld; provided, however, any vending machine installed in the building shall not exceed the weight load capacity of the floor where such machine is to be installed; and. Landlord reserves the right to require that such vending machine be separately metered in accordance with this Lease, and that

such vending machine is equipped with an automatic device that reduces the power consumption of such machine during non-peak hours of use machine.

16. Landlord shall not be responsible to tenants, their agents, contractors. employees or invitees for any loss of money, jewelry or other personal property from the leased premises or public areas or for any damages to any property therein from any cause whatsoever whether such loss or damage occurs when an area is locked against entry or not.

17. All tenants shall exercise reasonable precautions in protection of their personal property from loss or damage by keeping doors to unattended areas locked. Tenants. shall also report any thefts or losses to the Building Manager as soon as reasonably possible after discovery and shall also notify the Building Manager of the presence of any persons whose conduct is suspicious or causes a disturbance. The tenant shall be responsible for notifying appropriate law enforcement agencies of any theft or loss of any property of tenant or its employees, agents, contractors, or invitees.

18. All tenants, their employees, agents, contractors and invitees may be called upon to show suitable identification and sign a building register when entering or leaving the building at any and all times designated by landlord from time to time, and all tenants shall cooperate fully with Building personnel in complying with such requirements.
19. No tenant shall solicit from or circulate advertising material among other tenants of the building except through the regular use of the U.S. Postal Service. A tenant shall notify the Building Manager or the Building personnel promptly if it comes to its attention that any unauthorized persons are soliciting from or causing annoyance to tenants, their employees, guests or invitees.

20. Landlord reserves the right to deny entrance to the building or remove any person or persons from the building in any case where the conduct of such person or persons involves a hazard or nuisance to any tenant of the building or to the public or in the event or other emergency, riot, civil commotion or similar disturbance involving risk to the building, tenants or the general public.

21. Unless expressly authorized by Landlord in writing, no tenant shall tamper with or attempt to adjust temperature control thermostats in the building. Upon request. Landlord shall adjust thermostats as required to maintain the building standard temperature.

22. Except for the times noted in Section 1 1 of the Lease, all requests for overtime air conditioning or heating must be submitted in writing to the building management office by noon on the day desired for weekday requests, by noon Friday for weekend requests, and by noon on the preceding business day for Holiday requests.

23. Tenants shall only utilize the termite and pest extermination service designated or approved by landlord.

24. No tenant shall install, operate or maintain in its leased premises or in any other area of the building, any electrical equipment which will not bear Itie U/L (Underwriters Laboratories) seal of approval, or which would overload the electrical system or any part thereof beyond its capacity for proper, efficient and safe operation as determined by Landlord, taking into consideration the overall electrical system and the present and future requirements therefor in the building,

25. Parking in the Parking Facility shall be in compliance with all parking rules and regulations including any slicker or other identification system established by Landlord. Failure to observe the rules and regulations shall terminate an individual's right to use the Parking Facility and subject the vehicle in violation to removal and/or impoundment. Parking stickers or other forms of identification supplied by Landlord shall remain the property of Landlord and not the property of a tenant and are not transferable. The owner of the vehicle or its driver assumes all risk and responsibility for damage, loss or theft to vehicles, personal property or persons while such vehicle is in the Parking Facility.

26. Each tenant shall observe Landlord's reasonable rules with respect to maintaining standard window- coverings at all windows in its leased premises so that the building presents a uniform exterior appearance. Each tenant shall ensure that to the extent reasonably practical, window coverings are closed on all windows in its leased premises while they are exposed to the direct rays of the sun.

27. Bicycles and other vehicles are not permitted inside or on the walkways outside the building, except in those areas specifically designated by Landlord for such purposes and except as may be needed or used by a physically handicapped person.

28. Landlord reserves the right to rescind any of these rules and regulations and to make such other and further rules and regulations as in its judgement shall from time to time be needful for the safety, protection, care and cleanliness of the building, the operation thereof, the preservation of good order therein and the protection and comfort of the tenants and their agents, employees and invitees, which rules and regulations, when made and written notice thereof is given to a tenant, shall be binding upon it in like manner as if originally herein prescribed.


**Signature:**                              **Date:**

## FIRST AMENDMENT TO LEASE AGREEMENT

This First Amendment to Lease Agreement (this "Amendment") is made and entered into as of August 29, 2025, 2025, by and between Litchfield Carlyle, LLC, a Mississippi limited liability company ("Landlord"), and Beckham Custom Jewelry, LLC, a Mississippi limited liability company ("Tenant").

RECITALS

A. Landlord and Tenant entered into that certain Full Service Commercial Office Building Lease dated August 5, 2025 (the "Lease"), covering certain premises consisting of approximately 1,400 rentable square feet known as Suite 150A in Building A of the Cypress Ridge Office Building, located at 1867 Crane Ridge Drive, Jackson, Mississippi (the "Premises").

B. Landlord and Tenant desire to amend the Lease to convert the fixed Lease Term into a month-to-month tenancy on the terms set forth herein.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, Landlord and Tenant hereby agree as follows:

Amendment to Lease Term.

The Lease Term set forth in the Basic Lease Provisions and Article II of the Lease is hereby amended in its entirety. Effective as of August 29, 2025 (the "Effective Date"), the Lease shall continue on a month-to-month basis until terminated by either party. Either party may terminate the Lease by providing at least thirty (30) days' prior written notice to the other.

Rent.

Tenant shall continue to pay Base Rent in the amount of $1,600.00 per month, subject to adjustment under the Lease, on a month-to-month basis, together with all Additional Rent and other sums due under the Lease.

No Other Modifications.

Except as expressly modified by this Amendment, all of the terms, covenants, and conditions of the Lease shall remain unmodified and in full force and effect and are hereby ratified and confirmed.

Miscellaneous.

This Amendment may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

SIGNATURES

LANDLORD:

Litchfield Carlyle, LLC

a Mississippi limited liability company

By: _____

Name:  *MANAGER*

Title:  *Jeff Speed*

Date:  *9/2/25*

TENANT:

Beckham Custom Jewelry, LLC

a Mississippi limited liability company

By: _____

Name: Brian Beckham

Title:

Date:  *9/2/25*