## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**  **Beckham Jewlery, LLC,**                              **Case No. 25-01234-JAW**
            **Debtor**                                                           **CHAPTER 11**

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas C. Rollins, Jr., do hereby certify that a true and correct copy of the foregoing Order, Plan and Ballot was forwarded on October 3, 2025, to:

By Electronic CM/ECF Notice:

Craig M. Geno, Chapter 11 Trustee

U.S. Trustee



**SO ORDERED,**

*Jamie A. Wilson*

**Judge Jamie A. Wilson**
**United States Bankruptcy Judge**
**Date Signed: October 1, 2025**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

    **BECKHAM JEWELRY, LLC,**               **CASE NO. 25-01234-JAW**

    **DEBTOR.**                                   **CHAPTER 11**

### ORDER FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS TO THE PLAN AND FIXING TIME FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN, COMBINED WITH NOTICE THEREOF AND OF THE HEARING ON <u>CONFIRMATION OF THE PLAN</u>

A Chapter 11 Plan of Reorganization under Subchapter V (the "Plan") (Dkt. #146) having been filed by the Debtor on October 1, 2025.

**IT IS ORDERED, AND NOTICE IS HEREBY GIVEN, THAT**:

  A.  November 4, 2025 is fixed as the last day for filing written acceptances or rejections of the Plan.

  B.  Within 5 days after the entry of this order, the Debtor's attorney shall cause to be mailed to creditors, equity security holders, other parties in interest, and the United States trustee a copy of the following:

- This order;
- The Plan filed October 1, 2025;
- A ballot form for voting on the acceptance or rejection of the Plan, **which should be returned to the Debtor's attorney and not the Court.** The Debtor's attorney shall be served as follows: Thomas Carl Rollins, Jr, Esq., The Rollins Law Firm, PLLC, PO Box 13767, Jackson, MS 39236.

  C.  After completion of the above mailing, the Debtor's attorney shall immediately file a Certificate of Service with the Court, listing the names and addresses of each party served.

  D.  November 18, 2025 at 10: 00 a.m., in the Thad Cochran U.S. Courthouse, Bankruptcy Courtroom 4C, 501 East Court Street, Jackson, Mississippi, is fixed for the hearing on the confirmation of the Plan.

E. November 4, 2025 is fixed as the last day for filing and serving written objections to confirmation of the Plan. Attorneys and Registered Users of the Electronic Case Filing (ECF) System should file any response using ECF. Others should file any response at U.S. Bankruptcy Court, Thad Cochran U.S. Courthouse, 501 E Court St., Ste 2.300, Jackson, MS 39201. If you file a response, you or your attorney are required to attend the hearing. The hearing will be electronically recorded by the court.

##END OF ORDER##

Official Form 314  (02/20)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:   Beckham Jewelry, LLC, Debtor**

**Case No. 25-01234-JAW**
**CHAPTER 11**

# Class ___ Ballot for Accepting or Rejecting Plan of Reorganization

Beckham Jewelry, LLC filed a plan of reorganization dated October 1, 2025 (the Plan) for the Debtor in this case.

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claim has been placed in class ___ under the Plan. If you hold claims or equity interests in more than one class, you will receive a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by Thomas C. Rollins, Jr. on or before November 4, 2025, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Acceptance or Rejection of the Plan**

The undersigned, the holder of a Class _____ claim against the Debtor in the unpaid amount of
_____Dollars ($_____)

*Check one box only*

❑   **Accepts the plan**

❑   **Rejects the plan**

Dated: _____     Print or type name: _____

Signature: _____ Title _____

Address: _____

_____

_____

**Return this ballot to:**
Thomas C. Rollins, Jr.
P.O. Box 13767
Jackson, MS 39236

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:    **Beckham Jewelry, LLC, Debtor**                    **Case No. 25-01234-JAW**
                                                                                      **Chapter 11**

### PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11

Beckham Jewelry, LLC, Debtor-in-Possession in the above entitled Chapter 11, proposes the following Plan of Reorganization.

### ARTICLE I: DEFINITIONS

For purposes of this Plan, the following terms shall have the meanings ascribed to them below:

1.1     "Administrative Expense Claim" means a Claim entitled to priority under §503(b) of the Bankruptcy Code.

1.2     "Allowed Claim" means a Claim against the Debtor that has been scheduled and not disputed, or a timely filed proof of claim that is not disputed.

1.3     "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended.

1.4     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Mississippi.

1.5     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.6     "Cash" means legal tender of the United States of America.

1.7     "Cause of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or

unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, that the Debtor may hold against any Entity.

1.8    "Chapter 11 Case" means the case commenced by the Debtor under Chapter 11 of the Bankruptcy Code, styled as In re: Beckham Jewelry, LLC, Case No. 25-01234-JAW, pending in the Bankruptcy Court.

1.9    "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.10    "Class" means a category of Claims or Equity Interests designated pursuant to this Plan.

1.11    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.12    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1191 of the Bankruptcy Code.

1.13    "Debtor" means Beckham Jewelry, LLC, as debtor and debtor-in-possession in the Chapter 11 Case.

1.14    "Disposable Income" means the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

1.15    "Effective Date" means the date which is fourteen (14) days after entry of the Confirmation Order, unless stayed.

1.16    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.17    "Equity Interest" means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code.

1.18    "General Unsecured Claim" means any Claim that is not entitled to priority and is not secured by collateral.

1.19    "Net Operating Income" means the Debtor's gross income less all operating expenses, including but not limited to rent, utilities, payroll, insurance, taxes, and other costs necessary for the continuation, preservation, or operation of the Debtor's business.

1.20    "Plan" means this Plan of Reorganization Under Subchapter V of Chapter 11, including all exhibits and schedules hereto, as the same may be amended, supplemented, or modified from time to time.

1.21    "Priority Claim" means any Claim entitled to priority under sections 507(a)(2) through 507(a)(10) of the Bankruptcy Code.

1.22    "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

1.23    "Quarterly Distribution Date" means the first day of the first calendar quarter following the Effective Date, and the first day of each subsequent calendar quarter thereafter during the term of the Plan.

1.24    "Reorganized Debtor" means the Debtor, or any successor thereto, on or after the Effective Date.

1.25    "Secured Claim" means any Claim that is secured by a lien on property in which the Debtor has an interest, to the extent of the value of the creditor's interest in the Debtor's interest in such property.

1.26    "Subchapter V Trustee" means the trustee appointed under 11 U.S.C. §1183 for the Debtor's Chapter 11 Case.

## ARTICLE II: BACKGROUND

2.1     Beckham Jewelry, LLC previously operated as a retail and custom jewelry store. Due to high overhead and poor retail performance, the Debtor filed this Subchapter V Chapter 11 case to conduct a liquidation of its retail inventory and transition to an appointment-based custom design and repair business. A Court-approved liquidation sale generated approximately $260,000 net proceeds for the estate. The Debtor has assumed a new month-to-month office lease at modest rent and will continue operations on a leaner cost structure.

2.2     The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code May 14, 2025. The Debtor elected to proceed under Subchapter V of Chapter 11 pursuant to 11 U.S.C. § 1182(1). On May 15, 2025, the United States Trustee appointed Craig Geno as the Subchapter V Trustee pursuant to 11 U.S.C. § 1183(a).

2.3     Since the petition date, the Debtor has operated its business and managed its property as a debtor-in-possession pursuant to sections 1184 and 1186 of the Bankruptcy Code. The Debtor has successfully transitioned from a traditional retail jewelry operation to a more sustainable appointment-based custom design and repair business model, which has significantly reduced overhead costs while maintaining the ability to generate revenue.

2.4     The Debtor has filed this Plan to provide for the treatment of Claims against and Equity Interests in the Debtor, and to implement a reorganization that will allow the Debtor to continue its business operations while providing meaningful distributions to creditors.

### ARTICLE III: CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Pursuant to section 1122 of the Bankruptcy Code, the following Classes of Claims and Equity Interests are designated under this Plan.

3.2     Class 1 consists of all Administrative Expense Claims, including the fees and expenses of Debtor's counsel, Thomas C. Rollins, Jr., CPA Josh Norris, and the compensation and expenses of the Subchapter V Trustee, Craig M. Geno.

3.3     Class 2 consists of all Priority Tax Claims, including the claims of the Internal Revenue Service, the Mississippi Department of Revenue, and the Hinds County Tax Collector.

3.4     Class 3 consists of the Secured Claim of Kapitus.

3.5     Class 4 consists of all General Unsecured Claims, including the claims of trade creditors and any claims arising from the rejection of executory contracts or unexpired leases, such as any lease rejection claim filed by TDLDC.

3.6     Class 5 consists of the Equity Interests in the Debtor, specifically the membership interest of Brian Beckham, which shall be retained subject to the performance of the Plan.

**ARTICLE IV: TREATMENT OF CLAIMS AND INTERESTS**

**Class 1 – Administrative Claims:** All Administrative Expense Claims that are Allowed as of the Effective Date shall be paid in full in Cash within thirty (30) days of the Effective Date, or upon allowance if later. Any Administrative Expense Claims approved after the Effective Date, including additional fees and expenses of Debtor's counsel, CPA and the Subchapter V Trustee, shall be paid in full from available Net Operating Income as part of the Debtor's quarterly distributions.  No payment shall be made on account of any such fees or expenses until they are allowed by the Court upon proper application for compensation.  The Debtor shall cease making the $1,000 per month escrow distributions to the Subchapter V Trustee upon confirmation.


**Class 2 – Priority Tax Claims:** All Priority Tax Claims, shall be paid in full in Cash within thirty (30) days of the Effective Date, or upon allowance if later.

**Class 3 – Secured Claims:** The Allowed Secured Claim of Kapitus in the amount of $34,925 shall be paid in full in Cash within thirty (30) days of the Effective Date. Upon payment in full, the Kapitus lien, including its UCC-1 financing statement, shall be deemed satisfied, released, and of no further force or effect without the need for further action by the Debtor or order of the Court. This treatment renders the claim unimpaired under section 1124 of the Bankruptcy Code.

**Class 4 – General Unsecured Claims:** Holders of Allowed General Unsecured Claims shall receive Pro Rata quarterly distributions from the Debtor's available cash and future net income. On the first Quarterly Distribution Date, the Debtor shall distribute all remaining Cash on hand from the liquidation sale, less a $30,000 operating reserve to be retained by the Debtor for ongoing business operations. Thereafter, commencing with the next Quarterly Distribution Date and continuing for thirty-six (36) months or until such Claims are paid in full (whichever occurs first), the Debtor shall distribute Pro Rata all Net Operating Income in excess of the $30,000 reserve, after payment of ordinary business expenses and Allowed Administrative Expense Claims. The $30,000 reserve shall be maintained at all times during the term of the Plan.

**Class 5 – Equity Interests:** The ownership interest of Brian Beckham shall be retained throughout the duration of this Plan, subject to the Debtor's performance of the Plan. Mr. Beckham will continue to manage the Debtor's business operations during the term of the Plan. No distributions shall be made to Mr. Beckham on account of his Equity Interest until the completion of the Plan and until all Allowed Claims have been paid in accordance with its terms.

## ARTICLE V: MEANS FOR IMPLEMENTATION

5.1     Distributions under the Plan shall be funded by (i) the Cash remaining from the Court-approved liquidation sale, net of a $30,000 operating reserve to be maintained by the Debtor, and (ii) the Debtor's post-confirmation Net Operating Income from its custom jewelry and repair business. For purposes of this Plan, "Net Operating Income" means the Debtor's gross receipts, less ordinary and necessary business expenses, while preserving the $30,000 reserve.

5.2     The Debtor shall continue to exist as a Mississippi limited liability company following the Effective Date, with all powers under applicable state law and without prejudice to any right to alter or terminate such existence under applicable state law upon completion of the Plan.

5.3     On the Effective Date, all property of the estate and all property acquired by the Debtor under the Plan shall revest in the Debtor free and clear of all Claims and interests, except as otherwise provided in the Plan or the Confirmation Order. The Debtor shall thereafter hold and use such property in the ordinary course of its business, subject to the provisions of the Plan.

5.4     Brian Beckham shall continue to serve as the sole manager of the Debtor and shall remain responsible for the Debtor's day-to-day operations, including implementing the Plan and making all distributions required under the Plan.

5.5     Until completion of all payments required under the Plan, the Debtor shall file with the Court and provide to the Subchapter V Trustee quarterly reports of receipts and disbursements, including a summary of Net Operating Income, distributions made to creditors, and maintenance of the $30,000 reserve.

5.6     Unless otherwise waived, relinquished, or settled by the Debtor in writing, all claims, rights, defenses, setoffs, and causes of action of the Debtor, whether arising under the Bankruptcy Code or non-bankruptcy law, are expressly preserved and revested in the Debtor on

the Effective Date. The Debtor reserves the right to prosecute, settle, or abandon such causes of action in its discretion.

5.7     The Subchapter V Trustee shall continue to serve after the Effective Date with the limited duties of monitoring Plan performance, receiving quarterly reports, and assisting in the distribution of funds if required. Upon completion of all payments required under the Plan, the role of the Subchapter V Trustee shall be deemed dissolved without further order of the Court.

## ARTICLE VI: EXECUTORY CONTRACTS AND LEASES

6.1     On the Effective Date, the Debtor shall be deemed to have assumed the month-to-month office lease previously approved by order of the Court.

6.2     Except as expressly provided in Section 6.1, all other executory contracts and unexpired leases of the Debtor not previously assumed or rejected shall be deemed rejected as of the Effective Date.

6.3     Any claim for damages arising from the rejection of an executory contract or unexpired lease pursuant to this Article must be filed with the Bankruptcy Court within thirty (30) days following the date of rejection. Any such claims not timely filed shall be forever barred. Allowed claims for rejection damages shall be classified and treated as Class 4 General Unsecured Claims under this Plan.

6.4     To the extent of any monetary defaults under the month-to-month office lease or any other executory contract or unexpired lease assumed pursuant to this Article, the Debtor shall cure such defaults promptly following the Effective Date, or as otherwise agreed by the non-debtor party and the Debtor.

## ARTICLE VII: DISTRIBUTIONS

7.1     All distributions under the Plan shall be made by the Debtor. Distributions to holders of Allowed Claims shall be made in accordance with the classification and treatment of such Claims as set forth in Article IV of this Plan.

7.2     Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth in the Debtor's schedules, unless a different address is provided in a timely filed proof of claim or in a written notice served on the Debtor by the holder of such Claim.

7.3     If any distribution to a holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such holder unless and until the Debtor is notified of the holder's current address in writing. Undeliverable distributions shall be held for the benefit of such holder until the earlier of (i) 90 days after the date of the attempted distribution, at which time such distribution shall revert to the Debtor, or (ii) the date on which the holder provides the Debtor with an updated address.

7.4     Distributions under the Plan shall be made by check or, at the Debtor's option, by wire transfer or other electronic means.

7.5     No fractional payments or distributions shall be made under the Plan. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down to the nearest whole dollar.

7.6     The Debtor shall not be required to make any distribution of less than $25.00 on account of any Allowed Claim unless a request therefor is made in writing by the holder of such Claim.

7.7     The Debtor may, but shall not be required to, set off or recoup against any Claim any claims that the Debtor may have against the holder of such Claim. Neither the failure to do

so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim the Debtor may have.

7.8     To the extent a Claim entitled to distribution under the Plan is comprised of both principal and interest, such distribution shall be allocated first to the principal amount of the Claim, and thereafter to any interest allowed as part of such Claim.

## ARTICLE VIII: FEASIBILITY

8.1     The Debtor's business model is feasible due to reduced rent and overhead coupled with continued demand for custom jewelry and repair services. The attached Budget (Exhibit A) reflects monthly expenses of approximately $11,708.75, which can be supported by projected revenues, and the Debtor's financial projections show sufficient Net Operating Income to fund both ongoing operations and the distributions required under this Plan. Having successfully transitioned from a traditional retail jewelry operation to a sustainable appointment-based custom design and repair business, the Debtor has significantly lowered overhead while preserving the ability to generate revenue. The managing member, Brian Beckham, brings extensive experience in the jewelry industry and a loyal customer base that is expected to continue supporting the business in its new format.

8.2     Based on the Debtor's financial projections and the reduced expense structure, the Plan is not likely to be followed by further reorganization or liquidation. The Debtor believes that it will be able to make all payments required under the Plan and continue operating as a viable business enterprise.

## ARTICLE IX: BEST INTERESTS OF CREDITORS AND LIQUIDATION ANALYSIS

9.1     Pursuant to 11 U.S.C. § 1129(a)(7), the Plan satisfies the "best interests of creditors" test. The Debtor has prepared a liquidation analysis, which is attached hereto as

Exhibit B. This analysis demonstrates that holders of Allowed Claims would receive less in a hypothetical Chapter 7 liquidation than they will receive under the terms of this Plan.

9.2     In a Chapter 7 liquidation, a trustee would be appointed to liquidate the Debtor's assets. The trustee would incur additional administrative expenses, including trustee fees of up to 25% of the first $5,000, 10% of the next $45,000, 5% of the next $950,000, and 3% of any amount in excess of $1,000,000. These additional administrative expenses would reduce the amount available for distribution to creditors.

9.3     Furthermore, a Chapter 7 liquidation would not include the value of the Debtor's ongoing business operations, which will generate additional funds for distribution to creditors under this Plan. The Debtor's custom jewelry and repair business has significant value as a going concern, which would be lost in a liquidation scenario.

9.4     Based on the liquidation analysis, the Debtor estimates that in a Chapter 7 liquidation, holders of Allowed General Unsecured Claims would receive 30%, or likely less, of their claims.  The debtor projects to pay a higher distribution than 30% on the first Quarterly Distribution Date.  Therefore, the Plan provides a greater recovery for creditors than they would receive in a Chapter 7 liquidation.

## ARTICLE X: RETENTION OF JURISDICTION

10.1     Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to:

10.1.1  Allowing, disallowing, determining, liquidating, classifying, estimating, or establishing the priority, secured or unsecured status, or amount of any Claim or

Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

10.1.2   Deciding and resolving all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

10.1.3   Resolving any matters related to: (a) the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

10.1.4   Ensuring that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

10.1.5   Adjudicating, deciding, or resolving any motions, adversary proceedings, contested or litigated matters, and any other matters, and granting or denying any applications involving the Debtor that may be pending on the Effective Date;

10.1.6   Entering and implementing such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.1.7  Entering an order or final decree concluding or closing the Chapter 11 Case;

10.1.8  Resolving any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.1.9  Issuing injunctions, entering and implementing other orders, or taking such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

10.1.10     Enforcing any orders previously entered by the Bankruptcy Court; and

10.1.11     Hearing and determining such other matters as may be necessary or appropriate to carry out the provisions of the Plan and to enforce the Confirmation Order."

### ARTICLE XI: INVALIDATION OF LIENS AND DISCHARGE

11.1     All liens securing claims which are not allowed pursuant to the provisions of the Plan or Bankruptcy Code §§502 and 506 shall be invalidated and deemed null and void and of no further force in effect. The provisions of the confirmed plan shall bind all creditors and parties in interest whether they accept the plan or file a proof of claim. Unless otherwise specifically provided to the contrary herein or in the confirmation Order, on or after confirmation, all holders of Claims or Interests shall be precluded from asserting any claim against Beckham Jewelry, LLC or its assets or properties.

11.2    Pursuant to section 1141(d) of the Bankruptcy Code and except as otherwise expressly provided in this Plan or the Confirmation Order, upon the Effective Date, which shall be fourteen (14) days after the entry of the Confirmation Order, all pre-petition debts, claims, liens, encumbrances, and liabilities of any kind or nature whatsoever against the Debtor or any of its assets or properties, including, without limitation, interest accrued on such claims from and after the Petition Date, shall be immediately and forever discharged, released, and extinguished.

11.3    On and after the Effective Date, the Debtor and its estate shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and debts that arose before the Confirmation Date, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based upon such debt has accepted the Plan.

11.4    If the plan is confirmed non-consensually, then the discharge will be granted pursuant to 11 U.S.C. §§ 1191(b), 1192.

11.5    The discharge granted hereunder shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

11.6    Except as otherwise provided in the Plan or Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a debt, Claim, or other liability that is discharged are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim, or other liability: (i) commencing or continuing in any manner any action or other proceeding against the Debtor or its property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against

the Debtor or its property; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtor or its property; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

11.7    Nothing in this Plan shall be deemed to discharge, release, or otherwise affect any debt or Claim that is not dischargeable under section 1141(d)(2) or section 1141(d)(3) of the Bankruptcy Code or other applicable law.

Respectfully submitted,

By:     /s/ Thomas C. Rollins, Jr.
        Thomas C. Rollins, Jr. (MSBN 103469)
        The Rollins Law Firm
        P.O. Box 13767
        Jackson, MS 39236
        601.500.5333
        trollins@therollinsfirm.com
        Attorney for Beckham Jewelry, LLC

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:   **Beckham Jewelry, LLC, Debtor**                Case No. 25-01234-JAW
                                                                                 Chapter 11

### EXHIBIT A - BUDGET

| Expenses | |
|---|---:|
| Advertising | $125.00 |
| Contract Labor | $750.00 |
| Dues & Subscriptions | $836.25 |
| Insurance | $750.00 |
| Professional Fees | $1,000.00 |
| Rent | $1,600.00 |
| Tax | $350.00 |
| Office Supplies | $37.50 |
| Payroll | $800.00 |
| Postage & Shipping | $70.00 |
| Supplies | $57.50 |
| Utilities (Estimated) | $600.00 |
| Workers' Comp Ins | $232.50 |
| Owner's Payroll | $4,200.00 |
| Misc. | $300.00 |
| **Total Expenses** | **$11,708.75** |

The Debtor projects monthly gross income of approximately $12,000 to $17,000 during the months of January through October each year (after cost of goods sold and sales taxes). Consistent with historical performance, revenues are expected to increase significantly during the holiday season, with projected gross income of $30,000 to $40,000 per month in November and

December (after cost of goods sold and sales taxes). These seasonal variations reflect the nature of the jewelry industry, where custom orders, repairs, and gift sales peak during the fourth quarter.

In addition, the budget includes an owner's payroll of $4,200 per month. This amount is essential because Brian Beckham's sole source of income is from the Debtor, and the continued success of the business depends on his direct labor, management, and expertise in custom jewelry design and repair. Without his full-time involvement, the Debtor could not maintain operations or generate the projected revenues

The budget demonstrates that, even after covering all necessary expenses and providing a reasonable salary for the owner's services, the Debtor anticipates positive net income on a consistent basis. This net income, in excess of the $30,000 operating reserve, will fund quarterly distributions to creditors under the Plan.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:   **Beckham Jewelry, LLC, Debtor**                    **Case No. 25-01234-JAW**
**Chapter 11**

## EXHIBIT B – LIQUIDATION ANALYSIS

| Item | Scheduled Value | Estimated Ch. 7 Recovery | Notes |
|---|---|---|---|
| **Cash & A/R** | $7,465.00 | $7,465.00 | Full value assumed |
| **Inventory** | $496,000.00 | $149,000 (30%) | Discounted to bulk liquidation |
| **Fixtures/Equipment** | $145,900 | $29,180 (20%) | Office furniture, tools, safes |
| **Machinery/Signage** | $12,000.00 | $2,400 (20%) | |
| **Collectibles (artwork/mural)** | $28,000.00 | $8,400 (30%) | |
| **Total Assets (Ch. 7 recovery)** | $649,365.00 | ~$196,445 | Before costs |

In evaluating the best interest of creditors test, the Debtor has conducted a hypothetical

Chapter 7 liquidation analysis. The Debtor's schedules reflect total assets of approximately

$723,365. However, upon further investigation, it was discovered that one scheduled item had

been materially overstated. Specifically, the schedules included safes with an aggregate value of

$90,000 within the fixtures and equipment category, with one safe alone listed at $80,000. After

consultation with local safe companies and inspection of the property, it was determined that this

safe is only worth approximately $6,000. Adjusting for this correction reduces the scheduled

value of fixtures and equipment by $74,000, from $219,900 to $145,900.

In a forced liquidation scenario, cash and accounts receivable of $7,465 would be fully

recoverable. Inventory valued at $496,000 would likely bring no more than thirty percent of

book value in a bulk sale, resulting in approximately $149,000. Fixtures and equipment, as

corrected, would be expected to realize no more than twenty percent of the adjusted $145,900

scheduled value, resulting in approximately $29,180. Machinery and signage with a scheduled

value of $12,000 would be discounted to twenty percent, yielding $2,400. Artwork and murals listed at $28,000 would be expected to sell at roughly thirty percent of value, or $8,400. Altogether, the Chapter 7 recovery value of assets, after correcting the safe value, is estimated at approximately $196,445 before administrative costs.

From this amount, the estate would be reduced by the costs of liquidation. A Chapter 7 trustee would be entitled to a commission and reimbursement of expenses in the approximate amount of $40,000. Additional professional and auctioneer fees are estimated at $15,000. After deducting these expenses, the net distributable estate would be reduced to roughly $141,445. From this, secured claims in the amount of $34,925 held by Kapitus would be paid in full, followed by priority tax claims totaling approximately $16,310.80. This would leave approximately $90,000 for distribution to unsecured creditors.

The pool of unsecured claims totals about $293,602.37. Accordingly, in a Chapter 7 liquidation, unsecured creditors would receive a dividend of only thirty percent or less on their claims. By contrast, under the proposed Plan, the Debtor will distribute all cash on hand from the liquidation sale, less a $30,000 operating reserve, on the first quarterly distribution. The Debtor expects that this initial distribution alone will exceed the $90,000 projected to be available to unsecured creditors in Chapter 7. Subsequent quarterly distributions of net operating income will further increase the recovery. Thus, unsecured creditors stand to receive substantially more under the Plan, potentially up to a full recovery, thereby satisfying the best interest of creditors test required under section 1129(a)(7) of the Bankruptcy Code.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

BECKHAM JEWELRY, LLC

CASE NO: 25-01234

**DECLARATION OF MAILING
CERTIFICATE OF SERVICE**

Chapter: 11

On 10/3/2025, I did cause a copy of the following documents, described below,

Order and Plan

Ballot

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice. com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 10/3/2025

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr.

The Rollins Law Firm
702 West Pine St
Hattiesburg, MS  39401
601 500 5533
trollins@therollinsfirm.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

BECKHAM JEWELRY, LLC

CASE NO: 25-01234

**CERTIFICATE OF SERVICE
DECLARATION OF MAILING**

Chapter: 11

On 10/3/2025, a copy of the following documents, described below,

Order and Plan

Ballot

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 10/3/2025

Miles Wood
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Thomas C. Rollins, Jr.
The Rollins Law Firm
702 West Pine St
Hattiesburg, MS  39401

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

CASE INFO

 LABEL MATRIX FOR LOCAL NOTICING
NCRS ADDRESS DOWNLOAD
CASE 25-01234
SOUTHERN DISTRICT OF MISSISSIPPI
FRI OCT 3 10-52-30 PST 2025

DEBTOR

BECKHAM JEWELRY  LLC
120 DISTRICT BLVD  STE D110
JACKSON  MS 39211-6304

~~EXCLUDE~~

~~(U)KAPITUS~~

~~EXCLUDE~~

~~(U)LITCHFIELD CARLYLE  LLC~~

~~EXCLUDE~~

~~(U)MASON MAGNUM~~

MCLEOD  ASSOCIATES  PA
10 PROFESSIONAL PARKWAY
HATTIESBURG  MS 39402-2636

~~EXCLUDE~~

~~(U)STULLER  INC~~

~~EXCLUDE~~

~~(U)TPLDC RETAIL I  LLC~~

~~EXCLUDE~~

~~(U)WILKERSON  INC~~

~~EXCLUDE~~

~~US BANKRUPTCY COURT~~
~~THAD COCHRAN US COURTHOUSE~~
~~501 E COURT STREET~~
~~SUITE 2300~~
~~JACKSON  MS 39201-5036~~

AMERICAN EXPRESS
PO BOX 981537
EL PASO  TX 79998-1537

AMERICAN EXPRESS NATIONAL BANK
CO BECKET AND LEE LLP
PO BOX 3001
MALVERN  PA 19355-0701

BARNES  BAILEY   JANO
5 RIVERBEND PLACE
STE A
FLOWOOD  MS 39232-7618

BRIAN BECKHAM
120 DISTRICT BLVD
STE D110
JACKSON  MS 39211-6304

BRIAN BECKHAM
2 ASHLEY PARK DR
JACKSON MS 39206-6156

DAZZLE IMPORTS
5555 GLENDRIDGE CONNEC
STE 200
ATLANTA  GA 30342-4815

DYNASTY CASTING
644 SHREWSBERRY COMMON
SHREWSBURY  PA 17361-1617

ELDAR  INC
3068 N 2700 E
FORREST  IL 61741

EULER HERMES AGENT FOR NIVODA LIMITED
100 INTERNATIONAL DR 22ND FLOOR
BALTIMORE MD 21202-4783

GARY CARRIERE
725 WOODLAND ST
SULPHUR  LA 70663-1046

HAKIMI DIAMOND CORP
15 W 47TH ST
NEW YORK  NY 10036-3305

HEERA MOTI  INC
15 W 47TH ST
STE 808
NEW YORK  NY 10036-3327

HINDS CO TAX COLLECTOR
PO BOX 1727
JACKSON  MS 39215-1727

HINDS COUNTY TAX COLLECTOR
316 SOUTH PRESIDENT ST
JACKSON MS 39201-4801

IRS
CO US ATTORNEY
501 EAST COURT ST
STE 4430
JACKSON  MS 39201-5025

IRS
CENTRALIZED INSOLVENCY
PO BOX 7346
PHILADELPHIA  PA 19101-7346

(P)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

KAPITUS
2500 WILSON BLVD  STE
ARLINGTON  VA 22201-3873

KAPITUS SERVICING  INC
120 WEST 45TH STREET  4TH FLOOR
NEW YORK  NY 10036-4041

KELLY WATERS
PO BOX 240924
BOSTON  MA 02124-0016

KERRY WHITT  CO
125 DEATON RD
OWENS CROSS ROADS  AL 35763-9553

LABRILLIANTE LLC
330 WASHINGTON ST  PMB 231
HOBOKEN NJ 07030-4883

LAMHA
20 W 47ST ST
STE 807
NEW YORK  NY 10036-4298

MS DEPT OF REVENUE
BANKRUPTCY SECTION
PO BOX 22808
JACKSON  MS 39225-2808

MCLEOD  ASSOCIATES  PA
WILLIAM E MCLEOD
10 PROFESSIONAL PARKWAY
HATTIESBURG  MS 39402-2636

MCLEOD  RIGEL  PA
10 PROFESSIONAL PKWY
HATTIESBURG  MS 39402-2636

MISSISSIPPI DEPARTMENT OF REVENUE
BANKRUPTCY SECTION
PO BOX 22808
JACKSON  MS 39225-2808

NIVODA
580 5TH AVE
STE 2508
NEW YORK  NY 10036-4771

OVERNIGHT MOUNTINGS  I
1400 PLAZA AVE
NEW HYDE PARK  NY 11040-4921

ROBERT B IRELAND  III  ESQ
WATKINS  EAGER PLLC
ATTY FOR TDLDC RETAIL I  LLC
PO BOX 650
JACKSON  MS 39205-0650

S KASHI
175 GREAT NECK RD  STE 204
GREAT NECK  NY 11021-3313

S KASHI
175 ROAD STE 204
GREAT NECK  NY 11021

STULLER
PO BOX 87777
LAFAYETTE  LA 70598-7777

TDLDC RETAIL I  LLC
ROBERT B IRELAND  III
P O BOX 650
JACKSON MS 39205-0650

TR JEWELRY CONCEPTS
2707 MT RUSHMORE RD
RAPID CITY  SD 57701-5324

US ATTORNEY SD MISSISSIPPI
CO INTERNAL REVENUE SERVICE
501 E COURT STREET  STE 4430
JACKSON  MS 39201-5025

US ATTORNEY SD MISSISSIPPI
CO US SECURITIES AND EXCHANGE COMMISS
501 E COURT STREET  STE 4430
JACKSON  MS 39201-5025

US SECURITIES AND EXCHANGE COMMISSION
OFFICE OF REORGANIZATION
950 EAST PACES FERRY ROAD  SUITE 900
ATLANTA  GA 30326-1382

US ATTORNEY GENERAL
US DEPT OF JUSTICE
950 PENNSYLVANIA AVENW
WASHINGTON  DC 20003

~~EXCLUDE~~
~~UNITED STATES TRUSTEE~~
~~501 EAST COURT STREET~~
~~SUITE 6 430~~
~~JACKSON  MS 39201 5022~~

WLBT
715 S JEFFERSON ST
JACKSON  MS 39201-5622

WLBT TELEVISION
CO SZABO ASSOCIATES  INC
3355 LENOX ROAD NE  SUITE 945
ATLANTA  GA 30326-1357

WILLIAM E MCLEOD
MCLEOD  ASSOCIATES  PA
10 PROFESSIONAL PARKWAY
HATTIESBURG  MS 39402-2636

WILLIAM E MCLEOD  ESQ
MCLEOD  ASSOCIATES  PA
COUNSEL FOR MCLEOD  ASSOCIATES  PA
10 PROFESSIONAL PARKWAY
HATTIESBURG  MS 39402-2636

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

EXCLUDE

CRAIG M GENO
LAW OFFICES OF CRAIG M GENO, PLLC
601 RENAISSANCE WAY
SUITE A
RIDGELAND MS 39157 6038

JENNIFER A CURRY CALVILLO
THE ROLLINS LAW FIRM
702 W PINE ST
HATTIESBURG MS 39401-3836

EXCLUDE

(U) JOSEPH NORRIS

EXCLUDE

THOMAS CARL ROLLINS JR
THE ROLLINS LAW FIRM, PLLC
PO BOX 13767
JACKSON MS 39236 3767