UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

BECKHAM JEWELRY, LLC,                       CASE NO: 25-01234-JAW

DEBTOR.                                     CHAPTER 11

_____

OBJECTION TO DEBTOR'S AMENDED PLAN OF REORGANIZATION
UNDER SUBCHAPTER V OF CHAPTER 11 [DKT. 176]
_____

COMES NOW, Creditor TDLDC Retail I, LLC, by and through undersigned counsel, and files this Objection to Debtor's Amended Plan of Reorganization Under Subchapter V of Chapter 11 [Dkt. 176], and states:

1. Creditor is the single largest unsecured creditor with claims for unpaid prepetition rents and other sums owed per Debtor's store lease ($197,254.68) as well as lease rejection damages ($73,404.90) for a total of $270,659.58.

2. Creditor objects to the proposed amended plan of reorganization pursuant to 11 U.S.C. § 1191(b), (c) and 11 U.S.C. § 1129(a)(3), (7)(A)(ii), which objections are also directed to the underlying data on which the proposed plan is based.

3. The Court approved Debtor engaging a sales consultant to conduct a retirement sale of its inventory in the ordinary course of business.  *See* [Dkt. 84].  In connection with securing the parties' agreement to the sale, Debtor provided the sales consultant's projection that it would sell between 44% to 50% of the Debtor's

inventory of finished jewelry, loose stones and other assets, valued at a Debtor cost of $599,733, and that such a sale would result in net proceeds to Debtor of between $330,989 to $377,253.  Debtor also provided a detailed inventory identifying $602,539.59 for over 797 individual items at the same time.  Attached as Exhibit A is a true and correct copy of the consultant's most updated sale projections provided by Debtor.  Attached as Exhibit B is a true and correct copy of the detailed inventory prepared by Debtor.

4.     Creditor's objections are not based on the overly optimistic sales projection or the fact that Debtor realized only $260,000 in net proceeds from the sale. *See* [Dkt. 146] at 4 (¶ 2.1).

5.     In the proposed amended plan, Debtor's liquidation analysis (i) uses the Debtor's original, scheduled inventory valuation of $496,000, or $350,000 in finished jewelry and $146,000 in loose stones, precious metals, etc., rather than the ~$600,000 valuation supplied by Debtor and relied upon by the sales consultant; and (ii) assumes that all but 15% of Debtor's finished jewelry (or $52,000) and all but 51.4% of Debtor's loose jewels and precious metals (or $75,000) was sold at a retirement sale.  Based on the projections provided by the experienced sales consultant, Creditor would have expected far more inventory remains to be sold via wholesale or bulk channels, after a retirement sale in which Debtor netted only $260,000 than is included in the plan's liquidation analysis.

6.     Debtor's only post-sale inventory valuation from monthly operating reports is a $372,506.77 valuation from the November 2025 report, *see* [Dkt. 173] at

15, which amount would be much more consistent with a sale netting $260,000 of less than the 44-50% of inventory projected by the sales consultant.

7. Debtor's use of a $127,000 valuation of the remaining inventory to be sold through wholesale or bulk channels, versus a $372,506.77 valuation, let alone the correct valuation based on the actual inventory left, has a dramatic impact on the liquidation analysis and the Court's evaluation of the plan under the "best interests of the creditor" test under 11 U.S.C. § 1129.

8. Creditor also objects to Debtor's liquidation analysis because it does not give the Creditors the benefit of the Debtor's $260,000 net proceeds from the retirement sale, even though all creditors have had to bear the risk and the expense associated with Debtor conducting that sale. Rather, Debtor assumes that if a Chapter 7 trustee was forced to liquidate all originally scheduled inventory that the trustee would recover only $106,382.55 via a similar sale at which the same amount of inventory is sold, with only $28,125 left to be recovered via sale of the remaining inventory through wholesale or bulk channels. *See* [Dkt. 176] at 21, 26. Even if the Debtor's basic methodology could be sustained, Debtor did not account for $71,000 in loose stones and precious metals that were scheduled but were no longer in Debtor's possession after the retirement sale. *See id.* at 23 (listing $75,000 of original $146,000 in loose stones and precious metals "remaining after the sale").

9. With respect to the feasibility of the proposed amended plan, Creditor would also point out the huge reduction in the Debtor's cash on hand, per the Debtor's monthly operating reports (which do not add up correctly), following the retirement

sale via operations that neither complied with Debtor's income projections on the revenue side or Debtor's proposed budgets on the expense side, whether it be the six-month budget from July, [Dkt. 89], or the same $11,708.75 monthly budget proposed in the original and amended plans, [Dkt. 146] at 16 at & [Dkt. 176] at 19:

| Monthly Op. Report | Net Cash Flow | Cash on Hand at End of Month |
|---|---|---|
| June 2025 [Dkt-111] | $3,219.07 | $4,057.71 |
| July 2025 [Dkt-112] | $162,934.41 | $166,990.10 |
| August 2025 [Dkt-153] | $69,217.18 | $250,950.32 |
| Sept 2025 [Dkt-154] | ($81,507.27) | $150,358.50 |
| Oct. 2025 [Dkt-169] | ($27,886.31) | $122,478.00 |
| Nov. 2025 [Dkt-173] | ($23,043.20) | $99,434.83 |
| Dec. 2025 [Dkt-191] | ($15,790.66) | $94,434.83 |
| Jan. 2026 [Dkt-192] | ($22,636.84) | $72,020.25 |

10.  Finally, it is impossible for Creditor's view of the proposed amended plan not to be influenced by the dramatic reduction in amounts proposed to be paid to general unsecured creditors between Debtor's two plans filed only a few months apart.

11.  The original plan offered a rosy outlook that general unsecured creditors holding a total of $293,602.37 in claims would be paid in full after a large initial distribution and additional plan payments made from disposable income over the life of the plan. *See* [Dkt. 146] at 19 ("The Debtor expects that this initial distribution [to the general unsecured creditors holding $293,602.37 in claims] will exceed the $90,000 projected to be available to unsecured creditors in Chapter 7. Subsequent quarterly distributions of net operating income will further increase the recovery. Thus, unsecured creditors stand to receive substantially more under the Plan, potentially up to a full recovery, thereby satisfying the best interest of creditors

4

test[.]"); *id.* at 6 ("Thereafter, commencing with the next Quarterly Distribution Date and continuing for thirty-six (36) months <u>*or until such Claims are paid in full (whichever occurs first)*</u>, Debtor shall distribute Pro Rate all Net Operating Income" to the general unsecured creditors alone, all other creditors to be paid in full via the initial distribution).

12. In the proposed amended plan, however, Debtor proposes to pay the same creditors only $58,382.35 – more than $200,000 less – with their first partial payment not being made until 2028.

13. Creditor therefore objects to the plan, including, but not limited to, because the plan is not fair and equitable, in the best interests of the creditors, or feasible.

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth above, Creditor TDLDC Retail I, LLC respectfully requests the Court to consider its objection to Debtor's Amended Plan of Reorganization Under Subchapter V of Chapter 11 [Dkt. 176]. TDLDC Retail I, LLC further requests any and all general relief the Court deems equitable.

RESPECTFULLY SUBMITTED, this 10th day of March, 2026.

                                        **TDLDC RETAIL I, LLC**

                                  By:   */s/ Robert B. Ireland, III*
                                           Robert B. Ireland, III (MSB # 100708)
                                           WATKINS & EAGER PLLC
                                           Post Office Box 650
                                           Jackson, Mississippi 39205-0650
                                           Telephone:  (601) 965-1900
                                           E-Mail:  rireland@watkinseager.com

## **CERTIFICATE OF SERVICE**

I, Robert B. Ireland, III, do hereby certify that I have caused to be served the above and foregoing pleading on all parties requesting notice by using the ECF filing system of the court.

This 10th day of March, 2026.

                                                */s/ Robert B. Ireland, III*
                                                ROBERT B. IRELAND, III